# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF INDIANA

### SOUTH BEND DIVISION

| | |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | Case No. 3:05-MD-527-RM (MDL 1700) |
| THIS DOCUMENT RELATES TO: *All Coordinated Cases* | CHIEF JUDGE MILLER MAGISTRATE JUDGE NUECHTERLEIN |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRIVILEGED DOCUMENTS AND TESTIMONY

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................... 1

II.  THE MOTION TO COMPEL MUST BE DENIED BECAUSE
     PLAINTIFFS HAVE NOT COMPLIED WITH LOCAL
     RULE 37.1(B) ............................................................. 2

     A.   Local Rule 37.1(b) Requires the Moving Party to Make a "Good
          Faith" Effort to Meet and Confer Regarding the Dispute Prior
          to Filing the Motion ............................................... 2

     B.   Plaintiffs Did Not Comply with Local Rule 37.1(b) Because They
          Did Not Meet and Confer in "Good Faith" with Defendant ........ 3

     C.   Because Plaintiffs Did Not Properly Meet and Confer with
          FedEx Ground, Their Motion Is Comprised of Erroneous
          Statements Regarding the Purported Basis for Defendant's
          Assertion of the Attorney-Client Privilege ...................... 4

     D.   By Failing to Comply with Local Rule 37.1(b), the Motion to
          Compel Presents the Court With a Grossly Overbroad Request
          for Relief and, in Turn, Imposes an Undue Burden on the Court
          to Resolve this Dispute Just as Discovery Is Concluding and
          Class Certification Briefing Is About to Commence .............. 6

III. FED EX GROUND HAS NOT "WAIVED" THE ATTORNEY-
     CLIENT PRIVILEGE ..................................................... 7

     A.   Plaintiffs' Waiver Argument Is Premised on the Incorrect
          Assumption that FedEx Ground Intends to Offer Evidence of
          Advice of Counsel to Support Its Affirmative Defense of Good
          Faith .................................................................. 7

IV.  PLAINTIFFS' ALTERNATIVE REQUEST FOR PRODUCTION OF
     CERTAIN DOCUMENTS MUST BE DENIED BECAUSE FED EX
     GROUND HAS MADE A PRIMA FACIE SHOWING THAT THE
     DOCUMENTS ARE PROTECTED FROM DISCOVERY BY THE
     ATTORNEY-CLIENT PRIVILEGE ..................................... 10

     A.   FedEx Ground Has Satisfied its Burden of Proof to Make A
          Prima Facie Showing that the Documents It Has Withheld from
          Production Are Protected by the Attorney-Client Privilege ..... 10

**TABLE OF CONTENTS**
**(continued)**

Page

B.    Plaintiffs Cite Three Types of Documents that They Contend Have Been Improperly Withheld from Discovery, but Plaintiffs' Arguments for Production of These Documents Are Based on Either Incorrect Statements of the Law or Factual Assumptions that Are False. ......................................................................... 13

    1.    Documents Where No Attorney Received or Sent the Communication. ................................................ 13

V.    PLAINTIFFS' ALTERNATIVE REQUEST FOR THE RE-DEPOSITION OF FEDEX GROUND'S EMPLOYEES MUST BE DENIED BECAUSE DEFENSE COUNSEL PROPERLY ASSERTED THE ATTORNEY-CLIENT PRIVILEGE IN RESPONSE TO DEPOSITION QUESTIONS THAT CALLED FOR THE DISCLOSURE OF PRIVILEGED COMMUNICATIONS. ........................... 19

A.    Plaintiffs First Argument for Re-Deposing FedEx Ground Employees Is Based on the Incorrect Premise that Defense Counsel Have Instructed Witnesses Not to Answer Questions About All Company Communications Relating in Any Way to the Independent Contractor Model. ........................................ 19

B.    Plaintiffs' Next Argument for Re-Deposing FedEx Ground's Employees Is Based on the False Contention that the Company Has Consciously and Improperly Shielded from Discovery Communications that Solely Relate to Business Issues. ...................... 21

    1.    Plaintiffs Argue Incorrectly that Anytime a Communication with Lawyers Involves Business Considerations the Communications Lose their Status as Privileged Communications. ................................................. 21

    2.    Plaintiffs Contend in Error that FedEx Ground Has Improperly Assigned Lawyers to a Business Committee Called the Independent Contractor Model Team in Order To Shield the Routine Business Discussions of the Company from Discovery. ............................................. 22

VI.    CONCLUSION ........................................................ 24

BDDB01 4605642v1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Nat'l Bank & Trust Co. v. Equitable Life Assurance Soc'y*,
  406 F.3d 867 (7th Cir. 2005) ............................................................... 6

*Am. Nat'l Bank & Trust Co. v. Axa Client Solutions*, LLC,
  2002 U.S. Dist. LEXIS 4805 (N.D. Ill. Mar. 20, 2005) ................................ 5, 14, 21

*B.F.G. of Ill.*, No. 99 C 4604,
  2001 WL 1414468 (N.D. Ill. Nov. 13, 2001) .......................................... 25

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
  160 F.R.D. 437 (S.D.N.Y. 1995) ..................................................... 6, 14, 21

*Breneisen v. Motorola, Inc.*,
  No. 02 C 50509, 2003 U.S. Dist. LEXIS 11485 (N.D. Ill. July 3, 2003) .................. 19

*Chamberlain Group v. Interlogix, Inc.*,
  No. 01-C-6157, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002) ............................. 10

*Chicago Fire Fighters Union Local No. 2 v. Chicago*,
  No. 88 C 3773, 1990 U.S. Dist. LEXIS 11917 (N.D. Ill., Sept. 12, 1990)................ 18

*Coleman v. Am. Broadcasting Co., Inc.*,
  106 F.R.D. 201 (D.D.C. 1985)...................................................... 11, 22

*Corll v. Edward D. Jones & Co.*,
  646 N.E.2d 721 (Ind. Ct. App. 1995) ................................................ 11

*Dawson v. N.Y. Life Ins. Co.*,
  901 F. Supp. 1362 (N.D. Ill. 1995) ................................................. 10

*Evans*, 113 F.3d at 1461 ............................................................. 13

*FTC v. Glaxosmithkline*,
  294 F.3d 141 (D.C. Cir. 2002) ...................................................... 16

*Harter v. University of Indianapolis*,
  5 F. Supp. 2d 657 (S.D. Ind. 1998) ................................................. 9

*In re AT&T Access Charge Litig.*,
  451 F. Supp. 2d 651 (D.N.J. 2006) .................................................. 12

*In re Avantel, S.A.*,
  343 F.3d 311 (5th Cir. 2003) ....................................................... 16

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  1995 U.S. Dist. LEXIS 13626 (N.D. Ill. Sept. 18, 1995) ............................. 17

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Copper Market Antitrust Litig.*,
200 F.R.D. 213 (S.D.N.Y. 2001) .......................................................................... 16

*In re Ford Motor Co.*,
110 F.3d 954 (3d Cir. 1997) ................................................................................. 24

*In re Grand Jury 90-1*,
758 F. Supp. 1411 (D. Colo. 1991) ............................................................. 6, 14, 21

*Jackson v. City of Chicago*,
No. 03 C 8289, 2006 U.S. Dist LEXIS 32538 (N.D. Ill. Dec. 9, 2005) ...................... 9

*Johnson v. Sea-Land Service, Inc.*,
No. 99 CIV9161WHPTHK, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9,
2001) .............................................................................................................. 14, 21

*Kramer v. Raymond Corp.*,
No. 90-5026, 1992 WL 122856 (E.D. Pa. May 29, 1992)...................................... 25

*Levy Ind. Slag Co. v. Int'l Union of Operating Eng'rs, Local 150*,
Nos. 2:05 CV 344 & 2:05 CV 349, 2006 U.S. Dist LEXIS 45843 (N.D.
Ind. June 22, 2006)................................................................................................. 2

*Long v. Anderson University*,
204 F.R.D. 129 (S.D. Ind. 2001)...................................................................... 14, 21

*MBNA Am. Bank, N.A. v. Cioe & Wagenblast, P.C.*,
No. 2:05 CV 216, 2006 U.S. Dist. LEXIS 30273 (N.D. Ind. May 15,
2006) ..................................................................................................................... 2

*Minix v. Pazera*,
No. 1:04-cv-447 RM, 2005 U.S. Dist. LEXIS 10913 (N.D. Ind. May 27,
2005) ..................................................................................................................... 2

*Remus v Sheahan*,
No. 05 C 1495, 2006 U.S. Dist. LEXIS 37231 (N.D. Ill. May 23, 2006) ................... 9

*Rhone-Poulenc Rorer v. Home Indemnity Company*,
32 F.3d 851 (3d Cir. 1994)................................................................................. 8, 9

*Rios v. Ind. Univ*,
No. 3:04-CV-276 RM, 2005 U.S. Dist. LEXIS 15454 (N.D. Ind. July
28, 2005) ............................................................................................................... 2

*Sanchez v. Johnson*,
No. C-00-1593 (JCS), 2001 U.S. Dist. LEXIS 25233 (N.D. Cal. Nov.
19, 2001) ............................................................................................................. 12

## TABLE OF AUTHORITIES
### (continued)

Page

*Schofield v. United States Steel Corp.,*
   No. 2:04-CV-520-PRC, 2005 WL 3159165 (N.D. Ind. Nov. 28, 2005) ................... 10

*Strougo v. BEA Assocs.,*
   199 F.R.D. 515 (S.D.N.Y. 2001) .................................................... 6, 14, 21

*Traveler v. CSX Transp., Inc.,*
   No. 1:06-CV-56, 2006 U.S. Dist. LEXIS 80489 (N.D. Ind. Nov. 2,
   2006) ........................................................................................ 2

*United Investors Life Ins. Co. v. Nationwide Life Ins. Co.,*
   233 F.R.D. 483 (N.D. Miss. 2006) ............................................... 16

*United States v. Bilzerian,*
   926 F.2d 1285 (2d Cir. 1991) ..................................................... 10

*United States v. Evans,*
   113 F.3d 1457 (7th Cir. 1997) .................................................... 13

*United States. v. Federated Dept. Stores, Inc.,*
   170 B.R. 331 (S.D. Oh. 1994) ..................................................... 22

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.,*
   No. 01 Civ. 8854 (LTS)(THK), 2006 U.S. Dist. LEXIS 20648
   (S.D.N.Y. Apr. 18, 2006) ........................................................... 16

*Williams v. Sprint/United Mgmt. Co.,*
   No. 03-2200-JWL-DJW, 2006 U.S. Dist. LEXIS 65485 (D. Kan.
   Sept. 13, 2006) ........................................................................ 18


**Statutes**

Fed. R. Civ.P. 26(b)(3) ..................................................................... 18

Fed. R. Civ. P.  37 ......................................................................... 2

Fed. R. Civ. P.  37(a)(2)(A) ............................................................. 2

L.R. 37.1(b) ......................................................................... passim

BDDB01 4605642v1

## I.     <u>INTRODUCTION</u>

Plaintiffs have been on notice for many months that Defendant FedEx Ground Package Systems, Inc. ("Defendant" or "Company" or "FedEx Ground") was withholding from discovery documents and testimony on the basis of the attorney-client privilege and work product doctrine. In fact, in some of the Plaintiffs' first depositions of Company employees in mid-August, defense counsel instructed witnesses not to answer several questions on the grounds that those questions called for the disclosure of privileged communications.  Plaintiffs' counsel objected on the record and indicated that they intended to certify the dispute to the Court for resolution.  Yet, Plaintiffs did not do so until November 10, 2006.  In the intervening three months, Plaintiffs deposed nearly sixty Company employees.  In fact, by the time Plaintiffs filed this motion, virtually all of the depositions requested by Plaintiffs had been completed and discovery was near conclusion.

Now, just as the parties and the Court are preparing to commence class certification briefing and move this enormous case to a new stage, Plaintiffs ask the Court to re-open more than sixty depositions and order FedEx Ground to produce thousands and thousands of documents previously withheld from discovery upon a claim of privilege.  This motion is nothing but a naked request to vacate the Court's existing case management order and postpone by many months the various milestones in that order.

The Court should deny the Plaintiffs' motion because it is based on numerous misstatements of the law governing the attorney-client privilege as well as erroneous assumptions about the actual basis for Defendant's assertion of the privilege.  The reason for these basic deficiencies are clear -- Plaintiffs did not conduct a "good faith" and meaningful meet and confer with FedEx Ground regarding its assertions of the privilege before Plaintiffs burdened this Court with a motion that seeks sweeping and unprecedented relief.  Accordingly, the Court should deny the motion because the Plaintiffs did not comply with the local rules that require a good faith meet and confer prior to the filing of discovery motions.  Should the Court choose to entertain the Plaintiffs' arguments on the merits, the motion must be denied nonetheless because

BDDB01 4605642v1

FedEx Ground has met its burden to make a prima facie showing that it properly withheld the disputed documents and testimony upon a claim of privilege.  Plaintiffs cannot -- and will not -- rebut this factual showing.  Thus, the Court must deny their motion.

## II.    THE MOTION TO COMPEL MUST BE DENIED BECAUSE PLAINTIFFS HAVE NOT COMPLIED WITH LOCAL RULE 37.1(b).

### A.    Local Rule 37.1(b) Requires the Moving Party to Make a "Good Faith" Effort to Meet and Confer Regarding the Dispute Prior to Filing the Motion.

Under Federal Rule of Civil Procedure 37 and Local Rule. 37.1(b), a party that moves to compel the disclosure of documents or testimony must include a "certification that the movant has in *good faith* conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed. R. Civ. P.  37(a)(2)(A) (emphasis added)*; see also* L.R. 37.1(b).  "The purpose of a Local Rule 37.1 certification is to inform the court that the parties have attempted to resolve their discovery dispute before seeking court intervention." *MBNA Am. Bank, N.A. v. Cioe & Wagenblast, P.C.*, No. 2:05 CV 216, 2006 U.S. Dist. LEXIS 30273, at *3 (N.D. Ind. May 15, 2006); *Levy Ind. Slag Co. v. Int'l Union of Operating Eng'rs, Local 150*, Nos. 2:05 CV 344 & 2:05 CV 349, 2006 U.S. Dist LEXIS 45843, at *12 (N.D. Ind. June 22, 2006) ("It is not this court's responsibility to become a third party to discovery disputes between the litigants. … Local Rule 37.1 and the Rules of Professional Conduct direct that counsel are to diligently and in good faith attempt to resolve their discovery disputes prior to seeking court intervention.").  The failure to properly engage in a meaningful meet and confer imposes a tremendous imposition on the Court and the parties by way of discovery motions that could have otherwise been avoided or, at least, narrowed.  *Traveler v. CSX Transp., Inc.*, No. 1:06-CV-56, 2006 U.S. Dist. LEXIS 80489, at *4-6 (N.D. Ind. Nov. 2, 2006) (denying motion to compel for failure to meet and confer as required by Federal Rule of Civil Procedure 37 and Local Rule 37.1); *Rios v. Ind. Univ.*, No. 3:04-CV-276 RM, 2005 U.S. Dist. LEXIS 15454, at *6-7 (N.D. Ind. July 28, 2005) (same); *Minix v. Pazera*, No. 1:04-cv-447 RM, 2005 U.S. Dist. LEXIS 10913, at *3-4 (N.D. Ind. May 27, 2005) (same).  This is particularly the case here, where Plaintiffs' motion seeks the production of thousands of

privileged documents and second depositions of over sixty (60) Company employees just as the discovery period is closing and class certification briefing is about to commence.  In this regard, Plaintiffs' motion must be understood as nothing less than a request for the Court to dispense with the existing scheduling order and postpone by many months each of the milestones contained in that order.

**B.      Plaintiffs Did Not Comply with Local Rule 37.1(b) Because They Did Not Meet and Confer in "Good Faith" with Defendant.**

Plaintiffs' effort to meet and confer was inadequate because they only vaguely referenced the basis of their concerns about Defendants' assertion of the attorney-client privilege, and did not tie their generalized objections to the large number of documents and deposition instructions that are now the subject of their motion. (McGuinness Decl. ¶¶ 16-17, 20, 22.)  This abridged meet and confer process did not permit FedEx Ground to evaluate Plaintiffs' complaints in concrete terms and, thus, did not enable the parties to narrow the potential disputes. The attached Declaration of Michael McGuinness recites the chronology of the meet and confer that Plaintiffs pursued with Defendant prior to filing their motion to compel.  A brief review of that declaration demonstrates that Plaintiffs did not make a "good faith" effort to avoid motion practice by identifying all of the documents and deposition instructions that they contended were improper.

First, Plaintiffs conducted only one telephonic meet and confer on September 1, 2006, ten weeks prior to involving the Court.  (*Id.* ¶¶ 15-16.)  This single meet and confer touched briefly on only some -- but by no means all -- of the issues presented in Plaintiffs' current motion.  The meet and confer was followed with one e-mail message on October 16, 2006, with no further efforts to meet and confer prior to moving to compel the production of thousands of privileged documents and to reopen over sixty (60) depositions.  (*Id.* ¶¶ 18-19.)

Second, before filing this motion, Plaintiffs did not identify even some of the most basic grounds for their requested relief.  Most significantly, Plaintiffs never mentioned their contention that FedEx Ground had waived the attorney client privilege.  (*Id.* ¶ 22.)  This omission was significant, because the central argument supporting Plaintiffs' motion depends upon the

incorrect assumption that FedEx Ground intends to rely upon advice of counsel in its defense of these actions. (Pltf's Mem. at 11-15.) Had Plaintiffs met and conferred as required, they would have learned that FedEx Ground does not intend to offer evidence of advice of counsel to support its affirmative defense of good faith to Plaintiffs' punitive and exemplary damage claims. (McGuinness Decl. ¶ 22.)

Third, Plaintiffs met and conferred with Defendant regarding only a tiny fraction of the documents and testimony that now are the subject of their motion. (*Id.* ¶¶ 16-21.) Although Plaintiffs' present motion includes an index that runs *forty-six pages* in length and identifies thousands of documents that Plaintiffs contend were improperly withheld, during the entire meet and confer process, Plaintiffs identified only *two* sets of documents as objectionable, both of which FedEx Ground reviewed at Plaintiffs' request and concluded were properly withheld on the basis of the attorney-client privilege and work product doctrine. (*Id.*) Prior to filing the motion, Plaintiffs failed to identify even a representative sample of documents or testimony that they believed had been improperly withheld by FedEx Ground, much less each of the communications that they believed were improperly withheld. (*Id.*) In fact, during the entire meet and confer process with FedEx Ground, Plaintiffs never *even mentioned* the documents attached as Exhibits A, B & C to the Declaration of Susan Ellingstad. (*Id.* ¶ 21.)

Before Plaintiffs filed this motion, FedEx Ground invited them to identify any discrete documents they believed were improperly withheld so that it could evaluate their complaints, but Plaintiffs never did so. (*Id.* ¶¶ 17-19.) Given the general nature of their complaints, and Plaintiffs' unwillingness to identify even a representative sample of the particular documents and testimony now in dispute, it was impossible to conduct a meaningful meet and confer as contemplated by Local Rule 37.1(b). (*Id.* ¶¶ 24-27.)

    **C.**    **Because Plaintiffs Did Not Properly Meet and Confer with FedEx Ground, Their Motion Is Comprised of Erroneous Statements Regarding the Purported Basis for Defendant's Assertion of the Attorney-Client Privilege.**

Plaintiffs' failure to meet and confer has produced a motion premised fatally on false assumptions and acknowledged speculation as to the basis for FedEx Ground's assertions of

privilege.  For example, Plaintiffs have indicated that they are uncertain about the meaning of specific privilege log descriptions and "have no way of knowing" whether a document marked as "reflecting communications with FXG's Legal Department" is "genuinely a communication between counsel and FXG seeking or relaying legal advice."  (Pltf's Mem. at 10.)  Thus, Plaintiffs essentially concede that they did not request of FedEx Ground the factual information necessary to understand, much less dispute, Defendant's assertion of the privilege over this group of communications.

The purpose of the meet and confer process is to permit the Plaintiffs to ask these sorts of questions of FedEx Ground before the Plaintiffs burdened this Court with potentially unnecessary motion practice.  Indeed, in several instances, Plaintiffs preface their characterization of Defendant's position with words such as "appears" and "presumably", admitting that they did not meet and confer with FedEx Ground sufficiently to understand Defendant's actual reasons for asserting the attorney-client privilege.  For example, Plaintiffs claim that Defendant "*appears* to take the position that if an attorney at any time has rendered advice about any aspect of the company's business model -- all subsequent communications between non-attorney employees carrying out their business operations in light of that advice 'reflect' communications from counsel and are privileged."  (Pltf's Mem. at 1.)  Again, if Plaintiffs had asked FedEx Ground for the basis of its privilege claims over such communications, they would know that this is not the Company's position.  The Company's position is that, when Company employees privately discuss legal advice provided previously by Company counsel, those discussions do not lose their protection from discovery simply because the lawyer is no longer party to that communication.  *Am. Nat'l Bank & Trust Co. v. Axa Client Solutions, LLC*, 2002 U.S. Dist. LEXIS 4805, at *9-10 (N.D. Ill. Mar. 20, 2002) (stating that "[i]n the corporate context, it is well settled that the privileged nature of a communication does not lose its status as such simply because it is disseminated among numerous employees of the corporation," and prohibiting discovery of an e-mail message authored by one employee and sent to another which contained communications made for the purpose of obtaining or providing legal

advice); *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) ("[T]he distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege."); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (same); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (same).

Had Plaintiffs met and conferred properly with FedEx Ground, the Company would have responded to many of the issues that are now the basis for this motion, and would have eliminated them from further dispute.  Instead, they chose not to meet and confer about these documents and then asserted without factual basis that the documents do not qualify for protection.  In so doing, the Plaintiffs have put the Court in the unnecessary -- and untenable -- position of conducting an *in camera* review of thousands and thousands of documents.

**D.      By Failing to Comply with Local Rule 37.1(b), the Motion to Compel Presents the Court With a Grossly Overbroad Request for Relief and, in Turn, Imposes an Undue Burden on the Court to Resolve this Dispute Just as Discovery Is Concluding and Class Certification Briefing Is About to Commence.**

Plaintiffs seek disclosure of thousands and thousands of privileged communications, as is evidenced by the 46-page, single-spaced index of privileged documents appended to their motion.  *See* Ellingstad Aff. Exhs. A-C.  Plaintiffs have presented the Court with a monumental undertaking just as discovery is closing and class certification briefing is about to commence.  Even if the Court were to entertain the motion as presented, it would be required to conduct an *in camera* review of each communication at issue.  *Am. Nat'l Bank & Trust Co. v. Equitable Life Assurance Soc'y*, 406 F.3d 867 (7th Cir. 2005).  In *American National Bank*, the district court granted a motion to compel hundreds of documents over which a privilege had been asserted after reviewing a handful selected by the moving party and determining that some of the documents in that sample were not privileged.  The Court of Appeals concluded that the district court abused its discretion by failing to review all of the documents *in camera*.  *Id*. at 879-80.  The Seventh Circuit held that the district court should have conducted an *in camera* review of all

the documents if that was the only way to strike a fair balance between the movant's need for the documents and the respondent's interest in protecting its privilege. *Id.*

To conduct the *in camera* review required by the Seventh Circuit, this Court would need to devote hundreds and hundreds of hours to that review. While FedEx Ground believes that any such review is unnecessary because, as explained below, the assertion of privilege during discovery complies with applicable Seventh Circuit law, such a process would require the Court to vacate the current case schedule. It would necessitate a substantial delay in the briefing schedule for class certification and other pre-trial motions. Plaintiffs' inadequate meet and confer is even more egregious because, in some instances, they waited almost three months to seek relief from the Court. (*See* McGuinness Decl. at ¶ 28, attaching excerpts of deposition transcripts of James Krappa and Heather D'Alesandro in which Plaintiffs certified in mid-August 2006 deposition instructions they considered improper.) As a consequence, the Court should decline Plaintiffs' invitation -- at the eleventh hour -- to disrupt the case schedule and should instead deny the motion for failure to comply with Local Rule 37.1(b).

## III.  FED EX GROUND HAS NOT "WAIVED" THE ATTORNEY-CLIENT PRIVILEGE.

### A.  Plaintiffs' Waiver Argument Is Premised on the Incorrect Assumption that FedEx Ground Intends to Offer Evidence of Advice of Counsel to Support Its Affirmative Defense of Good Faith.

FedEx Ground has asserted the affirmative defense of good faith in response to Plaintiffs' claims for punitive and exemplary damages. (*See* Def's Twentieth Affirmative Defense). Plaintiffs' waiver argument is based on an erroneous interpretation of Defendant's objections to a single interrogatory and single document request, and mistakenly assumes an intent by FedEx Ground to rely upon advice of counsel to support the defense. (Pltf's Mem. at 11-15.) Contrary to Plaintiffs' assertion, Defendant's objections do not contend that FedEx Ground will rely on advice of counsel to prove its good faith defense.

The interrogatory at issue -- Plaintiffs' Interrogatory No. 289 -- asked Defendant to confirm whether it was relying on the advice of counsel "in asserting" any affirmative defense.

(*See* Interrogatory No. 289, Ellingstad Aff., Exh. N.)  FedEx Ground objected to the interrogatory on several grounds, but nowhere stated that it would offer the advice of counsel to support its good faith defense.  (*See id.* Def's Response to Interrogatory No. 289.)  Indeed, FedEx Ground does not interpret the Interrogatory to be asking about the *evidence* the Company intends to rely upon to support its affirmative defenses; the Interrogatory instead asks whether the Company relied on advice of counsel in deciding to *assert* the affirmative defense.

Nor did FedEx Ground's objections to Plaintiffs' requests for production indicate that the Company expected to offer evidence of advice of counsel to support the defense.  Plaintiffs' Request for Production No. 92 asked FedEx Ground to produce all documents that supported the affirmative defense of good faith.  FedEx Ground objected on various grounds, including that the discovery was premature in light of the Court's Amended Scheduling Order that prohibits discovery of evidence solely related to damages.  (*See* Def's Response to Request for Production No. 92, Ellingstad Aff., Exh. O.)  Of course, FedEx Ground also objected on the basis of the attorney-client privilege since the document request specifically asked for documents communicating advice from counsel.  But nothing in FedEx Ground's response accepted the faulty assumption made by Plaintiffs -- that the Company intended to offer the advice of counsel as evidence in support of its defenses.  Plaintiffs never sought to meet and confer or to otherwise contest FedEx Ground's objections to these written discovery requests.  (McGuinness Decl. ¶ 22.)

### B.    Fed Ex Ground Does Not Waive the Attorney-Client Privilege Simply by Asserting a Good Faith Defense.

It is Defendant's election regarding how to prove a good faith defense.  Where a party does not intend to rely upon advice of counsel to prove its good faith, there is no waiver of the attorney-client privilege.  Thus, in *Rhone-Poulenc Rorer v. Home Indemnity Company*, 32 F.3d 851 (3d Cir. 1994), the court rejected the notion that an attorney's advice is placed in issue, resulting in waiver of the attorney-client privilege, just because the advice is somehow relevant or because it might have affected the client's state of mind in a relevant manner.  *Id.* at 863.

Instead, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, *and attempts to prove that claim or defense by disclosing or describing an attorney client communication*." *Id.* (emphasis added).

Similarly, in *Harter v. University of Indianapolis*, 5 F. Supp. 2d 657 (S.D. Ind. 1998), the court relied on *Rhone-Poulenc Rorer* in rejecting the argument that the plaintiff had impliedly waived the attorney-client privilege by asserting a claim that required proof of good faith. The court in *Harter* stated in pertinent part:

> The better-reasoned cases hold, however, that when a client files a lawsuit in which his or her state of mind (such as good faith or intent) may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense. [citations] Harter's state of mind may be relevant here, but the possibility that privileged communications could provide the opponent with relevant evidence is not a sufficient basis for finding a waiver of the privilege.

*Id.* at 664-65. The court distinguished the case from those in which waiver occurs, where a claim or defense "relies specifically on proof of an attorney's actions," and explained the dangers of finding an automatic waiver: "The university's waiver theory would, if accepted, effectively and thoroughly erode the privilege and discourage parties from seeking advice from attorneys." *Id.* (citing *Rhone-Poulenc*, 32 F.3d 851); *see also Remus v Sheahan*, No. 05 C 1495, 2006 U.S. Dist. LEXIS 37231, at *6-7 (N.D. Ill. May 23, 2006) (stating that "[d]istrict courts in the Seventh Circuit have often followed the waiver rule set forth in *Rhone-Poulenc*" and collecting cases); *Jackson v. City of Chicago*, No. 03 C 8289, 2005 U.S. Dist LEXIS 32538, at *15-18 (N.D. Ill. Dec. 9, 2005) (same).

The cases cited by Plaintiffs to support their theory of implied waiver either endorse Defendant's position or are distinguishable. For example, Plaintiffs rely heavily on *Schofield v. United States Steel Corp.,* No. 2:04-CV-520-PRC, 2005 WL 3159165, at *5 (N.D. Ind. Nov. 28, 2005). But *Schofield* did not find an implied waiver -- in fact, the person against whom waiver was sought was not asserting any claim or defense implicating their state of mind, and so the waiver principle did not apply. Moreover, the court cited with approval the *Rhone Poulenc*

BDDB01 4605642v1

holding that "a client puts an attorney's advice at issue when 'the client asserts a claim or defense, *and attempts to prove that claim or defense* by disclosing an attorney client communication.'" *Id.* at *5 (emphasis added).  The *Schofield* court also cited *Chamberlain Group v. Interlogix, Inc.,* No. 01-C-6157, 2002 WL 467153, at *2 (N.D. Ill. Mar. 27, 2002) for the holding that "'[a] party *must affirmatively use privileged communications* to defend itself or attack its opponent in the action before the implicit waiver rule is applicable.'"  *Id.* (emphasis added).  Thus, the *Schofield* case simply confirms that, because FedEx Ground does not intend to offer privileged communications to prove its defense of good faith, there is no implied waiver.[1]

Plaintiffs' presumption -- in both their discovery requests and the instant motion -- that FedEx Ground intends to prove its good faith defense through evidence of advice of counsel is incorrect.  And, in the absence of such intent, there is simply no lawful basis for adopting Plaintiffs' argument that Defendant has impliedly waived the attorney-client privilege.

## IV. PLAINTIFFS' ALTERNATIVE REQUEST FOR PRODUCTION OF CERTAIN DOCUMENTS MUST BE DENIED BECAUSE FED EX GROUND HAS MADE A PRIMA FACIE SHOWING THAT THE DOCUMENTS ARE PROTECTED FROM DISCOVERY BY THE ATTORNEY-CLIENT PRIVILEGE.

### A. FedEx Ground Has Satisfied its Burden of Proof to Make A Prima Facie Showing that the Documents It Has Withheld from Production Are Protected by the Attorney-Client Privilege.

In response to Plaintiffs' motion, Defendant has offered evidence that the tiny fraction of its documents withheld from production in this case on the grounds of the attorney-client privilege and/or work product doctrine appropriately warrant protection from discovery.  (*See generally* McGuinness Decl., Heitzenrater Decl., Spalvieri Decl., and Muphy Decl.)  Plaintiffs cannot rebut this prima facie showing.  *See Coleman v. Am. Broadcasting Cos., Inc.*, 106 F.R.D. 201 (D.D.C. 1985) (holding that the party asserting the privilege must make a prima facie

---

[1] The other two cases cited by Plaintiffs to support their theory of implied waiver are clearly distinguishable. *Dawson v. N.Y. Life Ins. Co.*, 901 F. Supp. 1362, 1369-70 (N.D. Ill. 1995) (finding implied waiver only where employees testified in their depositions that they had relied specifically on factual information contained in the specific attorney communications sought by plaintiff); *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) (finding implied waiver where the defendant's only source for his good-faith belief was his attorney's advice; in contrast, FedEx Ground has no intention of relying on advice of counsel and intends to rely upon other evidence to establish its good faith defense).

showing that the privilege applies and then the burden shifts to the party challenging the privilege to rebut that showing); *see also Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721, 726 (Ind. Ct. App. 1995) (same).

The document requests Plaintiffs have served on FedEx Ground have required FedEx Ground to produce a monumental volume of material.  FedEx Ground has now produced over 1.5 million pages of documents.  (McGuinness Decl. at ¶ 3.)  This gargantuan document production has been completed on a tight discovery schedule that required FedEx Ground to dedicate enormous resources to the project.  For several months, FedEx Ground engaged over 50 lawyers working full-time (or nearly full-time) to this project.  (*Id.*)  The documents have been collected from fifty different facilities and eight regions across the country, and through an exhaustive search of files located at corporate headquarters in Pittsburgh.  (*Id.*)  The search has also involved extensive efforts to retrieve documents covering a five-year period from the electronic files of eighteen different high-level managers and officers of the Company, including the CEO.  (*Id.*)  Despite the enormous volume of documents collected to comply with Plaintiffs' sweeping requests, Defendant produced a privilege log before the entire production was complete and supplemented that log as newly collected documents were reviewed.  (*Id.* ¶ 16.)  At the end of November, Defendant's privilege log identified 7,458 documents withheld from production.  (*Id.* ¶ 7.)

Plaintiffs wrongly insinuate that the size of the privilege log is evidence that FedEx Ground improperly withheld documents from discovery.  (Pltf's Mem. at 9.)  In fact, the number of documents withheld by FedEx Ground based on the attorney-client privilege is neither excessive nor unusual given the scope of this litigation and the size of Defendant's document production.  (McGuinness Decl. ¶ 8.)  As a percentage of the total documents produced, the documents withheld upon a claim of privilege represent something over 1% of the total population.  (*Id.*)  This MDL proceeding consists of thirty-five actions covering a class period of more than six years.  In cases of this size and scope, it is not unusual for the document production to be enormous and the privilege log to be correspondingly large.  *See, e.g., In re*

*AT&T Access Charge Litig.,* 451 F. Supp. 2d 651 (D.N.J. 2006) (in an action involving over 150 plaintiff local exchange carriers operating throughout the country suing AT&T for failing to pay access charges, defendant produced a privilege log identifying thousands of pages of documents it withheld upon a claim of privilege); *Sanchez v. Johnson*, No. C-00-1593 (JCS), 2001 U.S. Dist. LEXIS 25233, at *17 (N.D. Cal. Nov. 19, 2001) (noting that privilege log listed thousands of pages of documents withheld on basis of deliberative process privilege). Here, the size of the privilege log is comparable to those generated in other large cases and is to be expected given that FedEx Ground has undertaken an enormous review that resulted in a production of over 1.5 million pages of documents.

To conduct a privilege review for such an enormous collection of documents, FedEx Ground established a review process designed to accurately and consistently identify those documents warranting protection from discovery based on the attorney client privilege and work product doctrine. (McGuinness Decl. ¶¶ 4-7.) According to the protocol followed by the reviewing attorneys, every document reviewed for production was examined for potential privilege designation. (*Id.* ¶ 5.) This review was consistent with the legal standards for privilege designations: (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Any document identified as *potentially* privileged during this initial review was then reviewed by a second group of attorneys exclusively for a determination as to whether a privilege applied. (McGuinness Decl. ¶ 5.) This second group of attorneys was provided an extensive written outline explaining the legal requirements for the attorney-client privilege and work-product doctrine. That outline also provided examples of how those legal principals might apply to the types of documents they were likely to examine. (*Id.*) These attorneys also received an oral presentation concerning the application of the privilege from an attorney at O'Melveny & Myers LLP. (*Id.*) If the second group of attorneys agreed that

- 12 -

a document was privileged, it was generally withheld and placed on a privilege log.  (*Id.*)
Throughout this process, the attorneys conducting both levels of review had access to more
senior attorneys to answer questions and provide direction as needed.  (*Id.* ¶ 6.)  The more senior
attorneys also provided a quality control function which resulted in certain documents receiving
three or more rounds of attorney review.  (*Id.*)

Based on this thorough and good faith process, FedEx Ground believes that the
documents it withheld from production on the grounds of the attorney-client privilege satisfy the
test for asserting the privilege in the Seventh Circuit.  *Evans*, 113 F.3d at 1461.

**B.  Plaintiffs Cite Three Types of Documents that They Contend Have Been Improperly Withheld from Discovery, but Plaintiffs' Arguments for Production of These Documents Are Based on Either Incorrect Statements of the Law or Factual Assumptions that Are False.**

**1.  Documents Where No Attorney Received or Sent the Communication.**

Plaintiffs' incorrectly assert that documents identified on the privilege log where no
attorney received or sent the communication cannot be protected by the attorney-client privilege.
(*See* Pltf's Mem. at 16-19.)  This is a misstatement of the law.  The attorney-client privilege
protects communications between employees of a company when those communications relate
or discuss confidential legal advice even though no lawyer is party to the subsequent
communication.  For example, in *Long v. Anderson University*, 204 F.R.D. 129, 134 (S.D. Ind.
2001), the court upheld the assertion of the attorney-client privilege regarding an e-mail message
between a university's director of human resources and the dean of students about legal advice
that the director received from the university's counsel.  The *Long* court cited *Johnson v. Sea-
Land Service, Inc.*, No. 99 CIV9161WHPTHK, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9,
2001), for the proposition that "'[t]he attorney-client privilege affords confidentiality to
communications among clients, their attorneys, *and the agents of both*, for the purpose of
seeking and rendering an opinion on law or legal services, or assistance in some legal
proceeding, so long as the communications were intended to be, and were in fact, kept
confidential.'"  *Long*, 204 F.R.D. at 134 (emphasis added).

These cases reflect the well-settled rule that the attorney-client privilege is not vitiated where a privileged communication is subsequently disseminated among employees of the corporation-client. *See, e.g., Am. Nat'l Bank & Trust Co. v. Axa Client Solutions, LLC*, 2002 U.S. Dist. LEXIS 4805, at *9-10 (N.D. Ill. Mar. 20, 2002) (holding that "[i]n the corporate context, it is well settled that the privileged nature of a communication does not lose its status as such simply because it is disseminated among numerous employees of the corporation," and prohibiting discovery of e-mail message authored by one employee and sent to another which contained communications made for the purpose of obtaining or providing legal advice); *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) ("[T]he distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege."); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (finding communications by employees within the client-corporation disclosing legal advice are protected by the attorney-client privilege).

Plaintiffs acknowledge that the *Long* and *Sea Land* cases properly state the law, but assert that the documents they request do not seek or relate legal advice because of the sheer number of such documents and the nomenclature used by Defendant on the privilege log. (*See* Pltf's Mem. at 17.) These assertions are baseless.[2] First, the fact that there are thousands of documents reflecting communications between employees in which they discuss or relate legal advice in the absence of an attorney is unremarkable given the scope of this litigation, the existence of, and

---

[2] In their motion, Plaintiffs offer a hypothetical that powerfully illustrates why this Court must deny their request for relief. Plaintiffs state that, "if a lawyer advises a company that it cannot discriminate in hiring based on sex and two managers subsequently discuss the reasons for a particular hiring decision that is later challenged, the communication between the non-lawyers regarding that decision is NOT privileged." (Pltf's Mem. at 18.) FedEx Ground agrees that the attorney-client privilege would not protect this hypothetical communication from discovery. In this hypothetical, the communication about the hiring decision does not reference or discuss the prior legal advice provided by counsel. But based on the description provided by Plaintiffs of the documents they cited on Exhibit A, those documents relate or discuss actual communications previously given by the Company's lawyers. (McGuinness Decl. ¶ 9.) Had plaintiffs complied with Local Rule 37.1(b), FedEx Ground would have communicated this key distinction to them during the meet and confer process.

interim decisions in, the *Estrada* case (*Anthony Estrada et al., v. RPS, Inc.*, Case No. BC 210130 (Los Angeles Sup. Ct.)), and the volume of documents produced.  (McGuinness Decl. ¶ 8.) Second, the nomenclature used by FedEx Ground on its privilege log properly denotes that the documents in question contain communications between employees of the Company in which they relate or discuss legal advice provided by counsel.  (*Id*.)  It is difficult to imagine how FedEx Ground could have more accurately described the basis for the assertion of the privilege over such documents.

In short, Plaintiffs have offered no evidence to rebut FedEx Ground's factual showing that the documents identified by Plaintiffs on Exhibit A to the Declaration of Susan Ellingstad relate or discuss legal advice and, therefore, are protected from discovery.

### 2.     Documents Copied to an Attorney.

Plaintiffs incorrectly claim that documents identified on FedEx Ground's privilege log -- where an attorney was copied on the communication but did not author the communication and was not the party identified as the primary recipient -- cannot be protected by the attorney client privilege.  (Pltf's Mem. at 19-21.)  Plaintiffs' argument is based on the factually incorrect premise that these documents were withheld only because a lawyer was copied on the communication.  To the contrary, based on the description provided by Plaintiffs of the documents identified on Exhibit B to Susan Ellingstad's Declaration, those documents were withheld because the authors of those documents copied the attorney on the communications in order to seek or invite legal counsel.  (McGuinness Decl. ¶ 10.)  *See In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003) (holding that, although documents do not become privileged merely because they are copied to an attorney, such documents may still be privileged if substantive requirements of privilege, for example, confidentiality, are met); *United Investors Life Ins. Co. v. Nationwide Life Ins. Co*., 233 F.R.D. 483, 489 (N.D. Miss. 2006) (same); *Urban Box Office Network, Inc. v. Interfase Managers, L.P*., No. 01 Civ. 8854 (LTS)(THK), 2006 U.S. Dist. LEXIS 20648, at *20 (S.D.N.Y. Apr. 18, 2006) (affirming privilege for e-mail message that was copied to counsel and intended to gather information for counsel's use in pending litigation).

- 15 -

Plaintiffs should know that Defendant has not withheld these documents from production solely because a lawyer was copied on the communication, since FedEx Ground has produced to Plaintiffs many documents where a Company lawyer *was* copied on the communication. (McGuinness Decl. ¶ 10, Exh. A contains a sample of such documents.)  Thus, Plaintiffs have offered no evidence to rebut FedEx Ground's factual showing that the documents identified by Plaintiffs on Exhibit B to the Declaration of Susan Ellingstad request or invite legal advice and, therefore, are protected from discovery.[3]

### 3.    Factual Summaries and Data Compilations Prepared for the Purpose of Rendering Legal Advice.

The third category of documents that Plaintiffs incorrectly assert are unprotected by the attorney-client privilege and work product doctrine are documents identified on FedEx Ground's privilege log as containing factual summaries or data compilations.  (Pltf's Mem. at 21-23.)

---

[3]  Plaintiffs' assertion that communications to an external public relations firm cannot be privileged is incorrect and unsupported by the case law.  Federal courts consistently have held communications relaying legal advice to external public relations firms concerning pending or ongoing litigation to be privileged.  *FTC v. GlaxoSmithKline*, 294 F.3d 141, 145-48 (D.C. Cir. 2002) (documents related to the marketing of Paxil which "had been disseminated to various 'teams' of company employees and contractors . . . [that] were 'involved in seeking or giving legal advice and/or gathering and recording information in anticipation of or preparation for litigation'" including external public relations firms were privileged because they were distributed on a need to know basis to provide input to the legal department or receive legal advice and strategies); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001) (same).  Here, Plaintiffs cite to Exhibits R and T to the Declaration of Susan Ellingstad as examples of public relations communications that cannot be privileged.  Plaintiffs did not identify Exhibit R to FedEx Ground during the meet and confer process prior to filing their motion.  (McGuinness Decl. ¶ 25.)  Had they done so, FedEx Ground would have investigated the claim of privilege and reported back to Plaintiffs that it did not believe the privilege had been properly asserted as to the document and would have promptly produced the document in unredacted form.  (*Id.*)  Since the filing of this motion, FedEx Ground has investigated the privilege claim for this document and determined that it was in error.  (*Id.*)  Defendant produced an unredacted version of this document to Plaintiffs accordingly.  (*Id.*)  FedEx Ground has also investigated the other documents cited to the Court in Exhibit T and concluded that the assertion of the attorney-client privilege and/or work product doctrine was proper as to those documents.  (*Id.*)

Plaintiffs will likely argue that Defendant's concession that it erred in withholding Exhibit R from production supports their request for relief.  To the contrary, it illustrates the importance of conducting the meet and confer required by Local Rule 37.1(b) prior to filing a motion that requests such sweeping relief, particularly when the motion can only be resolved based on a review of each disputed communication.  FedEx Ground does not contend that it is infallible.  Indeed, there have been several occasions in which Defendant inadvertently produced documents to Plaintiffs that it subsequently determined were privileged from discovery.  (*Id.* ¶ 26.)  In those instances, FedEx Ground has acknowledged the error and asked Plaintiffs to return the inadvertently produced documents.  (*Id.*)  Conversely, it is likely that if Plaintiffs had met and conferred with FedEx Ground properly, Defendant would have determined that some small number of documents had been withheld erroneously upon a claim of privilege from the more than 7,000 documents on the privilege log and, in turn, would have produced those few additional documents in discovery -- just as it has produced Exhibit R after Plaintiffs brought this discrete document to Defendant's attention.  (*Id.*)

Plaintiffs maintain that this entire category of documents cannot be protected by the attorney-client privilege or work product doctrine.  *Id.*  Plaintiffs' argument is incorrect because it ignores the fact that these factual summaries and data compilations were prepared or collected at the request of the Company's counsel for the express purposes of rendering legal advice. (McGuinness Decl. ¶11.)

While it is true that factual information or data compilations created in the ordinary course of a company's business are not shielded from discovery simply because they are subsequently transmitted to a lawyer, factual information gathered at the request of counsel for the purposes of rendering legal advice is protected by the attorney-client privilege.  *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 U.S. Dist. LEXIS 13626, at *4-5 (N.D. Ill. Sept. 18, 1995) ("Class Plaintiffs are mistaken if they would have us hold that economic or business information sent to an attorney can never fall under the protection of the attorney-client privilege . . . [W]hile client documents produced in the ordinary course of business will not be protected by the privilege, documents -- even those setting forth economic or business data -- may be deemed privileged if they were intended to be confidential and were produced for the purpose of receiving legal advice."); *Chicago Fire Fighters Union Local No. 2 v. Chicago*, No. 88 C 3773, 1990 U.S. Dist. LEXIS 11917, at *1-2 (N.D. Ill., Sept. 12, 1990) (finding data tables protected by attorney-client privilege where data was collected and compiled by attorney as part of an investigation necessary to give legal advice to client); *Williams v. Sprint/United Mgmt. Co.,* No. 03-2200-JWL-DJW, 2006 U.S. Dist. LEXIS 65485, at *5-9 (D. Kan. Sept. 13, 2006) (finding that statistical analyses based on non-privileged demographic data performed at direction of attorney to determine adverse impact of proposed layoff on certain groups were performed to secure legal advice and thus privileged).

The factual summaries and data compilations cited by Plaintiffs in Exhibit C to the Declaration of Susan Ellingstad were created at the request or direction of counsel and for the purposes of permitting Company lawyers to render legal advice.  For example, the Plaintiffs challenge documents identified on Defendant's privilege log as "summaries" of contractor

related policies, which are referenced at Exhibit S to the Declaration of Susan Ellingstad.  As

defense counsel explained to Plaintiffs during the meet and confer process, these summaries are

data compilations prepared for litigation-risk analysis by FedEx Ground's Legal Department

regarding contractor compliance with a particular policy.  (Ellingstad Aff., Exh. Q.)  These

summaries were prepared by Company employees who, unlike Company counsel, possessed the

technical expertise to produce this type of compilation.  (Spalvieri Decl. ¶¶ 2-5.)  Further, the

summaries were created on behalf of and at the request of in-house attorney Anthony Spalvieri.

(*Id.* ¶¶ 2-3.)  These summaries were thereafter circulated with a privileged and confidential

memorandum from Mr. Spalvieri that provided specific legal advice to Company managers

regarding the importance of strict compliance with the contractor-related policy in question.  (*Id.*

¶¶ 4-5.)  Accordingly, there can be no legitimate doubt that the documents are subject to the

attorney-client privilege.

      Moreover, these documents were also created in anticipation of litigation (Spalvieri Decl.

¶ 4.) and are protected by the work-product doctrine.  Fed. R. Civ. P. 26(b)(3).  In the very same

authority cited by Plaintiffs to support production of these documents, *Breneisen v. Motorola,*

*Inc.*, No. 02 C 50509, 2003 U.S. Dist. LEXIS 11485 (N.D. Ill. July 3, 2003), the court held that

factual summaries and chronological statements prepared by individual defendants and a human

resources manager at the direction of counsel and in anticipation of litigation were protected by

the work-product doctrine, noting that the "work-product privilege extends beyond the attorney

to documents prepared by a party's representative or agent."  *Id.* at *14.  This is exactly the

situation here, where the reports were prepared and collected at the direction of counsel in

anticipation of litigation.[4]  (See Spalvieri Decl. ¶¶ 2-5.)

---

[4] Plaintiffs have incorrectly stated in their motion that FedEx Ground has not asserted a work-product claim to
withhold these documents.  (Pltf's Mem. at 22.)  To the contrary, in the very e-mail message that plaintiffs cited to
the Court to document their meet and confer, which is Exhibit Q to Susan Ellingstad's Declaration, O'Melveny &
Myers LLP attorney Michael McGuinness expressly asserted the protection of the work-product doctrine with
regard to these documents.  Moreover, to remove any doubt about the basis of the privilege claim, FedEx Ground
has amended its privilege log to make absolutely clear that FedEx Ground is asserting work-product protection with
respect to these summaries.  (McGuinness Decl. ¶ 11,  confirming service of amended privilege log.)

Likewise, the documents identified at Exhibit L to the Declaration of Susan Ellingstad are privileged and subject to the work product doctrine.  In connection with active litigation before the National Labor Relations Board ("NLRB") in 2004 and 2005, one of FedEx Ground's law firms, Ogletree, Deakins, asked the Contractor Relations Department and the Legal Department to distribute a survey to terminal managers for the purposes of collecting data that would assist the law firm in advising the Company regarding the pending litigation.  (Murphy Decl. ¶ 2.) The Ogletree questionnaires and the responses collected in response to the questionnaires were prepared in order to assist in active litigation before the NLRB.  (Murphy Decl. ¶¶ 2-6.)  The questionnaires were drafted by Ogletree attorneys and were distributed at the direction of Ogletree as part of its defense of the NLRB proceedings.  (Murphy Decl. ¶¶ 2-6.)  Accordingly, the completed questionnaires and responses to those questionnaires were properly withheld from production as privileged attorney-client communications and confidential attorney work product.

Thus, Plaintiffs have offered no evidence to rebut FedEx Ground's factual showing that the documents identified by Plaintiffs on Exhibit C are factual summaries or data compilations prepared at the direction of counsel for the purposes of rendering legal advice.

**V.     PLAINTIFFS' ALTERNATIVE REQUEST FOR THE RE-DEPOSITION OF FEDEX GROUND'S EMPLOYEES MUST BE DENIED BECAUSE DEFENSE COUNSEL PROPERLY ASSERTED THE ATTORNEY-CLIENT PRIVILEGE IN RESPONSE TO DEPOSITION QUESTIONS THAT CALLED FOR THE DISCLOSURE OF PRIVILEGED COMMUNICATIONS.**

**A.     Plaintiffs First Argument for Re-Deposing FedEx Ground Employees Is Based on the Incorrect Premise that Defense Counsel Have Instructed Witnesses Not to Answer Questions About All Company Communications Relating in Any Way to the Independent Contractor Model.**

Plaintiffs' initial argument in favor of reopening the depositions of over sixty Company witnesses -- just as discovery closes[5] -- is based upon a gross distortion of defense counsel's assertions of privilege at depositions.  Contrary to Plaintiffs' allegation (Pltf's Mem. at 23), defense counsel have not instructed witnesses to refuse to answer questions about all

---

[5] Again, FedEx Ground's deposition instructions and position were clear in August.  Plaintiffs could have sought a ruling on those instructions then but instead conducted multiple additional depositions, which they now seek to reopen, before doing so.

communications that relate in any way to FedEx Ground's independent contractor model. Defense counsel have properly instructed Company witnesses not to answer questions about the independent contractor model only when the answer would reveal a privileged attorney-client communication or confidential attorney work product.  The record indisputably establishes this point.  (*See* McGuinness Decl. ¶ 12, Exh. B, which provides samples of instructions given by defense counsel confirming that witnesses were advised not to disclose communications with or from counsel, but witnesses were otherwise permitted to answer questions if they could provide information that was not privileged.)  Indeed, there were many instances during the depositions of FedEx Ground witnesses where defense counsel issued the witness a cautionary instruction and the witness answered the question with non-privileged information after consideration of counsel's guidance.  (*Id.*, which provides samples of testimony by witnesses following cautionary instructions provided by defense counsel.)  Accordingly, Plaintiffs are simply incorrect in their assertion that defense counsel issued broad and unfounded instructions to Company witnesses during depositions.

Plaintiffs also challenge privilege instructions by defense counsel on the grounds that the communications that are the subject of Plaintiffs' deposition questions did not involve lawyers and, hence, cannot be protected by the attorney-client privilege.  (Pltf's Mem. at 23.)  For reasons explained above, however, simply because no lawyer is a party to a communication between two company employees does not mean the communication cannot be protected by the attorney-client privilege.  *See* Section IV.B(1) (citing *Long v. Anderson University*, 204 F.R.D. 129, 134 (S.D. Ind. 2001); *Am. Nat'l Bank & Trust Co. v. Axa Client Solutions, LLC*, 2002 U.S. Dist. LEXIS 4805, at *9-10 (N.D. Ill. March. 20, 2005); *Johnson v. Sea-Land Service, Inc.*, No. 99 CIV9161WHPTHK, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9, 2001); *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995); and *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991)).  Where Company witnesses were questioned by Plaintiffs about conversations with other employees who are not lawyers, defense counsel properly instructed the

witnesses not to answer the questions *only to the extent* the employees subsequently discussed prior communications with their lawyers.  (McGuinness Decl. ¶ 12, Exh. B, which provides a sample of instructions to witnesses who were advised only not to disclose communications that would reveal advice of counsel, but witnesses were otherwise permitted to answer questions if the answers did not disclose privileged communications.)[6]  Consequently, Plaintiffs' fixation on whether a lawyer was physically a party to the communication at issue misses the point entirely and provides no factual basis for the Court to vitiate defense counsels' privilege instructions to Company witnesses.

> **B.    Plaintiffs' Next Argument for Re-Deposing FedEx Ground's Employees Is Based on the False Contention that the Company Has Consciously and Improperly Shielded from Discovery Communications that Solely Relate to Business Issues.**
>
> > **1.    Plaintiffs Argue Incorrectly that Anytime a Communication with Lawyers Involves Business Considerations the Communications Lose their Status as Privileged Communications.**

While routine business discussions are not subject to the privilege simply because a lawyer is party to the conversation, a company can properly assert the attorney-client privilege to protect from discovery legal advice sought or given by a lawyer to company employees.  "The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman v. Am. Broadcasting Co., Inc.*, 106 F.R.D. 201,

---

[6] Plaintiffs have specifically objected to privilege instructions given to Heather D'Alesandro and James Krappa by defense counsel, concerning a conversation that Ms. D'Alesandro had with Mr. Krappa, relating to his work on behalf of the FedEx Ground Legal Department.  (Pltf's Mem. at 7.)  Plaintiffs contend -- incorrectly -- that the instructions prevented them from securing testimony from these witnesses about a "business problem" that Mr. Krappa discussed with Ms. D'Alesandro during that conversation.  (*Id.*)  This assertion is simply wrong. Ms. D'Alesandro testified at length about the "business problem" that she discussed with Mr. Krappa.  (D'Alesandro Tr. at 9:13-25, 11:18-12:4, 77:21-78:16, 82:3-85:12.)  She described the business problem, how she came to learn of the business problem, and what Mr. Krappa thought needed to be done to address the problem.  (*Id.*)  Contrary to Plaintiffs' contention, the instructions by defense counsel to Mr. D'Alesandro were limited solely to those portions of her conversation with Mr. Krappa regarding his work on behalf of the Legal Department as a Special Assignment Manager.  (D'Alesandro Tr. at 82:7-82:23.)  Defense counsel instructed Ms. D'Alesandro and later Mr. Krappa not to answer questions relating to the content of his work as an agent of the FedEx Ground Legal Department or regarding any legal guidance or instructions that he related to Ms. D'Alesandro at the request of counsel.  (*Id.*; Krappa Tr. at 134:19-134:21.)  As the Declarations of James Krappa and Heather D'Alesandro demonstrate, the conversation in question was clearly protected by the attorney-client privilege and work product doctrine, and was, in part, for the purpose of relaying legal advice and guidance from the Legal Department concerning a review of Company policy and procedure undertaken by the Legal Department.  (Krappa Decl. ¶¶ 1-8; D'Alesandro Decl. ¶¶ 2-6.)  Accordingly, the privilege instructions challenged by Plaintiffs were entirely proper and should be sustained.

206 (D.D.C. 1985); *United States. v. Federated Dept. Stores, Inc.*, 170 B.R. 331, 354 (S.D. Oh. 1994) (holding that communications with tax department regarding tax consequences of acquisition were privileged; "the mere fact that business considerations weighed in the rendering of legal advice does not vitiate the attorney-client privilege.")  Courts have frequently acknowledged that legal and business considerations are commonly intertwined, which is inevitable when legal advice is rendered in the context of commercial transactions or in the operation of a business in a corporate setting.  *Coleman*, 106 F.R.D. at 205-06 (finding no loss of privilege where communications involved both legal and business issues, and explaining that "legal and business considerations may frequently be inextricably intertwined.  This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting.").

Therefore, Plaintiffs' simply misstate the law when they repeatedly suggest that the attorney-client privilege cannot apply anytime FedEx Ground employees discussed business issues with Company lawyers.  If the purpose of those communications was to obtain or receive legal counsel, those communications are privileged notwithstanding that the communications may implicate other business considerations.

> **2.      Plaintiffs Contend in Error that FedEx Ground Has Improperly Assigned Lawyers to a Business Committee Called the Independent Contractor Model Team in Order To Shield the Routine Business Discussions of the Company from Discovery.**

Plaintiffs also allege that FedEx Ground has abused the attorney-client privilege by consciously assigning attorneys to business committees of the Company to improperly shield discoverable evidence.  (Pltf's Mem. at 23-25.)  Plaintiffs cite a single example of this so-called abuse -- the Company's Independent Contractor Model Team ("ICM Team").  (*Id.*)  However, Plaintiffs' argument is based on two false assumptions: (1) that the ICM Team is established for primarily business purposes; and (2) that the communications of the ICM Team members are not for purposes of seeking or providing legal advice.

The ICM Team was created and formed by the FedEx Ground Legal Department in July 2005, and after the *Estrada* decision and the filing of numerous copycat class actions, for the *exclusive* purpose of providing a forum in which Company officers and executives could seek, and the Legal Department could provide, candid legal advice for ensuring that Company policies, procedures and practices comported with legal requirements for the independent contractor model.  (Heitzenrater Decl. ¶ 2.)  The ICM Team was created and governed pursuant to a formal charter drafted by the FedEx Ground Legal Department.  (*Id*.)  Pursuant to this charter, the Legal Department outlined the following objectives for the ICM Team: (1) to prepare the Company's defense of pending and threatened legal matters; (2) to provide legal advice to the Company on possible ways to further fortify the independent contractor model; (3) to provide legal advice to ensure that new and existing programs and training materials are consistent with legal requirements for independent contractor status; and (4) to provide legal advice on the development of an education program for the FedEx Ground and Home Delivery management concerning the independent contractor model.  (*Id*. ¶ 5.)  Additionally, the charter tasked the ICM team with gathering and analyzing additional facts and data for the purpose of rendering legal advice on the independent contractor model.  (*Id*.)  The ICM Team conducted its activities in a manner consistent with these charter objectives.  (*Id*.)  The ICM Team is chaired by Stacey Heitzenrater, in-house counsel to FedEx Ground and Doug Knoch, Vice President of Special Projects.  The membership includes various high-level officers and managers of different departments of the Company.  (*Id*. ¶ 3.)

The ICM Team has no routine business functions unrelated to this core legal mission and would not exist but for the pending lawsuits.  (*Id*. ¶ 7.)  In addition, the ICM Team members are instructed not to share the confidential communications of the ICM Team with persons outside of the Company.  (*Id*. ¶ 6.)  Because of the purpose of the ICM Team and the manner in which it conducts its meetings, all of the communications that occur within the ICM Team are for purposes of seeking or obtaining legal advice.  (*Id*. ¶¶ 2-7.)

BDDB01 4605642v1

Because the ICM Team is a legally chartered and directed committee and the communications among its members are for purposes of obtaining or seeking legal advice, FedEx Ground has made a prima facie showing that the communications are protected by the attorney-client privilege. *See, e.g., In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997) (holding communications of a business committee which seeks and obtains legal advice for purposes of making business decisions remain privileged even when the ultimate decisions of the committee are business decisions). The cases Plaintiffs cite purporting to hold to the contrary are distinguishable. The business committees discussed in all of those cases were not created at the direction of counsel for purposes of rendering legal advice but rather performed routine business functions of the companies. *See, e.g., B.F.G. of Ill.*, No. 99 C 4604, 2001 WL 1414468, at * 6 (N.D. Ill. Nov. 13, 2001); *Kramer v. Raymond Corp.,* No. 90-5026, 1992 WL 122856, at *2 (E.D. Pa. May 29, 1992).

Accordingly, Plaintiffs have offered no evidence to rebut FedEx Ground's factual showing that defense counsels' deposition instructions were proper. As a result, this Court must deny Plaintiffs' alternative request to re-depose more than sixty Company employees in this case.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.

Dated:  December 8, 2006

Respectfully submitted,

By: _____/s/  Thomas J. Brunner_____

Thomas J. Brunner

John H. Beisner
Robert M. Schwartz
Evelyn L. Becker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001

Thomas J. Brunner
Alison G. Fox
BAKER & DANIELS LLP
205 West Jefferson Blvd., Suite 250
South Bend, IN 46601

*Defendants' Liaison and Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2006, I filed the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Privileged Documents and Testimony with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Susan E. Ellingstad
sellingstad@locklaw.com

Robert I Harwood
rharwood@whesq.com

Peter W. Overs, Jr.
povers@whesq.com

Lynn R Faris
lfaris@leonardcarder.com

John C Hamilton
jch@hamiltonfirm.com
hamiltonfirm@sbcglobal.net

By: _____/s/  Thomas J. Brunner_____