UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

---------------------------------------------------)
                                                   )
In re FEDEX GROUND PACKAGE      )   Cause No. 3:05-MD-527-RM
SYSTEM, INC., EMPLOYMENT        )   (MDL 1700)
PRACTICES LITIGATION            )
                                                   )
---------------------------------------------------)
THIS DOCUMENT RELATES TO:       )
                                                   )
ALL ACTIONS                                   )
---------------------------------------------------)

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO AUGMENT THE RECORD IN THE CROSS MOTIONS FOR SUMMARY ADJUDICATION OF EMPLOYMENT STATUS**

FedEx Ground Package System, Inc.'s (FXG) opposition to Plaintiffs' Motion to Augment the Record points to no legitimate reason why this Court should decline to consider the key documents Plaintiffs offer, which FXG has only recently produced. FXG tries to evade its new addenda to the Operating Agreement, while at the same time conceding their relevance to summary adjudication by erroneously claiming that they support FXG's position that the drivers are independent contractors. Manifestly, the Court should decide the pending summary adjudication motions based on a full record containing the entire Operating Agreement – a document that the Court has already recognized as central to the analysis.

As for the IRS Notices of Proposed Adjustment (NOPAs), FXG ignores that this Court has determined their relevance and that the only reason Plaintiffs did not offer them with the record previously submitted is that FXG refused to produce them until ordered to do so by the Court less than two months ago. *See* Doc. 1593. FXG's argument that the IRS "did not find any contractors to be employees" asks the Court to close its eyes to the plain language of the NOPAs,

1

which plainly find after almost fifty pages of detailed analysis, that FXG's "contractors" – and all of them – are employees under the common law right-to-control test applied by the IRS. *See* FXG's Opposition to Motion to Augment the Record at 10 ("Opp.," Doc. 2002). FXG's argument that the NOPAs are inappropriate for consideration attacks a straw man. Plaintiffs offer these detailed analyses as persuasive authority, not as a basis for collateral estoppel or as conclusive proof of employment status as a matter of law. FXG fails to point to any legitimate reason why the Court should not consider the IRS' detailed and sweeping review of the critical employment status issue. Plaintiffs' motion should be granted.

## ARGUMENT

**A.     The New OA Addenda are Material Evidence of Employee Status.**

In arguing that the Court should not consider the new provisions of the OA offered by Plaintiffs, FXG ignores that this Court has held that the OA supplies important, if not the most important, evidence of employment status. *See* Docs. 906, 1119, 1770. FXG also ignores that it itself has argued that the OA is so important that the Court should not look at anything else. FXG cannot be heard to legitimately claim that new provisions of the OA adding new restrictions should not be reviewed.

Nor are the new addenda cumulative of other evidence in the record. A quick perusal of the documents shows the inaccuracy of this position. FXG's expansive new Safe Driving Program, for example, imposes new restrictions on drivers' ability to hire and retain workers. *Compare* Dec. of Faris in Support of Plaintiffs' Motion to Augment ("Faris Dec.," Doc. 1994) Exh. 19:1-10 *to* Doc. 1197 Exh. 1:131-139. The prior Safe Driving Addendum did not, for example, require drivers to terminate an existing helper or assistant for certain infractions, including minor traffic violations (§5.6); prohibit drivers from hiring an assistant who has been

convicted of any of a broad list of crimes, even misdemeanors (§3); or require drivers to suspend an assistant charged with an infraction before a finding of guilt based on FXG's subjective, untested belief that the individual is probably guilty (§1.8).  These new restrictions promulgated by FXG for its own purposes cannot be ignored, particularly in the face of FXG's flagship argument that the drivers' ability to hire others is inconsistent with employment.

FXG argues that it has imposed these new restrictions to "'improve safety performance.'" Opp. at 7 (quoting Faris Dec. Exh. 20:11).  FXG's alleged reason for imposing restrictions – whether a good reason or a bad reason – is immaterial to whether these new rules show that FXG has reserved the right control how drivers perform their work.

FXG argues that none of the new addenda matters because a driver can refuse to sign. However, there is no dispute that any driver who signs the addenda is required to comply with FXG's rules set forth therein.  *See* OA §12.1 (OA may be terminated if driver "breaches or fails to perform the contractual obligations imposed").  One of FXG's own Division Vice Presidents agreed that it was an "extremely rare exception" for any driver to refuse to sign addenda presented by FXG.  Doc. 1893 Exh. A Vol. 1 at page 433, lines 8-11 (Hiltz Deposition).

FXG argues that the new CCS addenda do not support employee status because they merely set out the requirements for obtaining a bonus.  But the fact that FXG has chosen to obtain compliance by granting or denying pay does not show an absence of control.  To the contrary, FXG has chosen to use "one of the most effective tool[s] available [in getting workers to do their work the way the company wants]: taking money out of the drivers' income." *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1100 (9th Cir. 2008) (finding that cab drivers were employees where cab company obtained compliance with its work rules by, among other things, withholding pay).

3

*Strange v. Nationwide Mutual Insurance Company*, Case No. Civ. A. 93- 6585, 1997 WL 550016, at *6, 8 (E.D. Pa. Aug. 21, 1997), cited by FXG, addresses insurance agents who could advertise their services under their own names, were paid solely on commission and given bonuses or rewards based on the number of policies they sold and the revenue they generated. Because the bonus and incentive programs were directed to results only, the court found that they did not show the company's reserved right to control the manner and means of how the work was performed. *Id.* FXG's CCS pay rewards drivers according to, not only whether they pick up and deliver, but how they do it – wearing a FXG uniform, following FXG's signature service and driver release rules, and avoiding certain disqualifying events in FXG's new Safe Driving Addendum. Faris Dec. Exh. 19:21, 23, 26.

FXG argues that the new addenda setting a fixed termination date should be disregarded because they only apply in Maryland. But FXG's termination of all of the contracts in Maryland indicates that FXG holds the power to terminate all of the contracts in every state. Moreover, obtaining an annual pay raise is contingent upon executing the new addenda offered by FXG for each new fiscal year. *See* Doc. 1197 Exh. 8:831, lines 5-25 (Sullivan Deposition). The fact that FXG has chosen to coerce Maryland drivers into a specific termination date by conditioning pay raises on "agreement," only shows that FXG has decided to use a "carrot" rather than a "stick" to get its drivers to do what it wants. Either way, it is FXG alone who sets the terms.[1]

---

[1] FXG argues that the new addenda requiring drivers to use E-Verify to check the immigration status of any assistants or helpers merely comports with the rules FXG must follow as a federal contractor. This argument fails to show why this Court should decline to consider the full OA, including all of its addenda, in ruling on the pending motions.

**B.     The IRS NOPAs' Analyses and Conclusions Provide Persuasive Authority that the Court Should Consider.**

The NOPAs contain pages of analysis of the employment status of all FXG "contractors" and conclude that they are all employees under the IRS' common law test.  Faris Dec. 21.  FXG points to no legitimate reason why the Court should decline to consider this persuasive authority that the Court has already found "relevant and material to matters in this litigation."  Doc. 1953 at 10-11.

FXG's argument that the NOPAs are not worthy of collateral estoppel effect misses the point.  Plaintiffs do not argue that the NOPAs preclude FXG from denying that its drivers are employees, thereby entitling Plaintiffs to adjudication of employment status as a matter of law.  In other words, Plaintiffs do not argue that the NOPAs are akin to the judgment in *Estrada v. FedEx Ground Package System, Inc*., which does entitle Plaintiffs to such relief.  *See, e.g.,* Doc. 1194.  Rather, Plaintiffs assert that the right-to-control analysis in the NOPAs provides persuasive authority that this Court should consider in evaluating the pending cross motions for summary adjudication in this case, which address the same issue of employment status and the same core set of facts.  Like the common law control test applicable in many of the pending cases, under the IRS' iteration of the test:

> [A] worker is an employee when the person for whom the services are performed has the right to control and direct the individual who performs the services.  This control reaches not only the result to be accomplished, but also the details and means by which this result is to be accomplished.  Note that control must be present, but need not actually be exercised.

IRS Manual § 4.23.5.6 (2-1-2003).

FXG claims that the IRS is supposed to analyze application of the Internal Revenue Code Section 530 "safe harbor" provision first before reaching the question of employment status under the right-to-control test.  But this argument also misses the mark.  Regardless of the

preferred order of an IRS audit or any IRS procedural rules on the subject, there can be no dispute that in this case, the IRS first conducted a thorough and detailed evaluation and analysis of the drivers' employment status and found all of FXG's "contractors" to be employees under the right-to-control test.  Faris Dec. Exh. 21.  Even assuming that the agency was supposed to have analyzed the application of the Section 530 "safe harbor" first, such an irregularity in the order of the proceeding would not alter the persuasive value and relevance of the NOPAs right-to-control analyses.[2]

FXG also argues that application of the "safe harbor" means that "the IRS did not determine that Ground and Home Delivery contractors were employees."  Opp. at 9-10.  To be sure, the IRS ultimately determined that the "safe harbor" prevented it from seeking back taxes from FXG and thus issued no final determination of employee status.  Faris Dec. Exh. 22.  But FXG's argument ignores the plain language of the NOPAs and exalts form over substance.  *See* Faris Dec. Exh. 21.

The right-to-control test of employment status and the "safe harbor" test are distinct and independent inquiries.  The IRS Manual, also cited by FXG, explains:

> Section 530 only terminates the liability of the employer for employment taxes but has no effect on the employees' status.  It does not convert the workers from the status of employee to the status of self-employed (independent contractor).

IRS Manual § 4.23.5.2.3 (11-3-2009); *see also In re Rasbury*, 130 B.R. 990, 1003 (N.D. Ala. 1991) (also cited by FXG explaining that "Section 530 functions basically as a defense against liability determined by the Internal Revenue Service for misclassification").  Thus, the IRS'

---

[2] Several of the authorities FXG cites make clear that the IRS *may* perform the "safe harbor" analysis first before analyzing employee status, but do not say that the IRS must conduct the analyses in this order as a matter of law. IRS Chief Counsel Advisory 200948042, 2009 WL 4092540, at *17 (IRS CCA Nov. 27, 2009) ("Congress intended to make clear that there does not first have to be a determination that a worker is an employee under the common law standards before application of Section 530"); *In re Rasbury*, 130 B.R. 1003, 1010 (N.D. Ala. 1991) (quoting House Committee and Subcommittee report explaining that "safe harbor" analysis would obviate the need for the IRS to analyze employee status).

"safe harbor" ruling (Faris Dec. Exh. 22) does not undercut the substance of the IRS' prior analyses and conclusion that FXG reserves the right to control how the drivers perform their work under the right-to-control test (*id.* Exh. 21). The "safe harbor" determinations merely mean that a loophole in the tax code makes it impossible for the IRS to assess back taxes from FXG. And FXG does not dispute that, unlike the right-to-control test, the tax code's "safe harbor" has no analog in the cases before this Court.

FXG asks the Court to refuse to consider the NOPAs by raising the specter of unidentified "collateral issues" that the Court will supposedly have to consider. This argument should be rejected. The NOPAs speak for themselves and Plaintiffs have provided the Court with a complete copy of every one, including those ultimately concluding that FXG is eligible for the "safe harbor." Faris Dec. Exhs. 21-22. No manner of "contextualization" or window-dressing by FXG will alter the NOPAs plain language. Certainly, this Court will be required to reach its own conclusions about the drivers' employment status, but the persuasive value of the NOPAs' analyses cannot legitimately be disputed.

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court consider the new OA Addenda and NOPAs in ruling on the pending cross motions for summary adjudication of employment status.

Dated: February 23, 2010                    Respectfully submitted,

                                                              LEONARD CARDER, LLP

                                                                /s/ **Eleanor I. Morton**
                                                            ELEANOR I. MORTON, ESQ.
                                                            1188 Franklin St., Suite 201
                                                           San Francisco, CA 94109
                                                           Tel: (415) 771-6400
                                                           Fax: (415) 771-7010

| | |
|---|---|
| Susan E. Ellingstad | Robert I. Harwood |
| LOCKRIDGE GRINDAL NAUEN P.L.L.P. | HARWOOD FEFFER LLP |
| 100 Washington Avenue South, Suite 2200 | 488 Madison Avenue, 8th Floor |
| Minneapolis, MN 55401 | New York, NY 10022 |
| Tel: (612) 339-6900 | Tel: (212) 935-7400 |
| Fax: (612) 339-0981 | Fax: (212) 753-3630 |

**PLAINTIFFS' CO-LEAD COUNSEL**

Peter J. Agostino
ANDERSON, AGOSTINO & KELLER, PC
131 South Taylor Street
South Bend, IN 46601
Tel: (574) 288-1510
Fax: (574) 288-1650

**PLAINTIFFS' LIAISON COUNSEL**