**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

```
------------------------------------------------ )
                                                 )
In re FEDEX GROUND PACKAGE                       )        Cause No.  3:05-MD-527-RM
SYSTEM, INC., EMPLOYMENT                          )        (MDL 1700)
PRACTICES LITIGATION                             )
                                                 )
------------------------------------------------ )
THIS DOCUMENT RELATES TO:                        )
                                                 )
Reginald Gray, et al. v. FedEx Ground            )
Package System, Inc.,                            )
Civil No. 3:06-cv-00337-RLM-CAN (MO)             )
------------------------------------------------ )
```

<u>**STIPULATION TO FILE THIRD AMENDED COMPLAINT
TO ADD FOUR NEW PLAINTIFFS**</u>

The undersigned parties stipulate to permit Plaintiffs in this case to file a Third Amended

Complaint (attached hereto) for the sole purpose of adding four additional named plaintiffs.  The

parties' agreement to add Plaintiffs Robert Hansen, Bob O'Keefe, Luther McLain and Bob Lee

Baker (see paragraphs 23-28 of Third Amended Complaint) is without prejudice to Defendant

FedEx Ground Package System, Inc.'s right to assert affirmative defenses regarding said

Plaintiffs, including, but not limited to, those pertaining to applicable statutes of limitation.  As

per this Court's Order of June 19, 2008 (Doc. No. 1425), paragraph 2, the parties shall be entitled

to take the additional limited discovery provided therein.  The parties request that the Court

accept this stipulation and grant an Order to file the Third Amended Complaint attached hereto.

Dated:   April 19, 2010                    Respectfully Submitted,

                                           __/s/_Lynn_Rossman Faris_____
                                           Lynn Rossman Faris
                                           Eleanor Morton
                                           LEONARD CARDER, LLP
                                           1330 Broadway, Suite 1450

Oakland, CA 94612
Tel: (510) 272-0169
Fax: (510) 272-0174
Email: lfaris@leonardcarder.com
emorton@leonardcarder.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Susan E. Ellingstad
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
Email: seellingstad@locklaw.com

Robert I. Harwood
HARWOOD FEFFER LLP
488 Madison Avenue, 8th Floor
New York, NY 10022
Tel: (212) 935-7400
Fax: (212) 753-3630
Email: rharwood@hfesq.com

**PLAINTIFFS' CO-LEAD COUNSEL**

John E. Toma, Jr.
Melissa M. Zensen
TOMA ZENSEN, LLC
408 North Euclid Avenue, 3rd Floor
St. Louis, MO 63108
Tel: (314) 361-1600
Fax: (314) 361-1612
Email: jtoma@tomazensen.com
mzensen@tomazensen.com

**MISSOURI PLAINTIFFS' COUNSEL**

**/s/Robert M Schwartz**
**O'MELVENY & MYERS LLP**

Thomas J. Brunner
Alison G. Fox
BAKER & DANIELS LLP
202 South Michigan Street, Suite 1400
South Bend, IN 46601
Tel: (574) 234-4149
Fax: (574) 239-1900
Email: Thomas.Brunner@bakerd.com
Alison.Fox@bakerd.com

1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
Fax: (310) 246-6779
Email: rschwartz@omm.com

**DEFENDANT'S LEAD AND LIAISON COUNSEL**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

------------------------------------------------- )
                                                  )
In re FEDEX GROUND PACKAGE        )          Cause No.  3:05-MD-527-RM
SYSTEM, INC., EMPLOYMENT           )          (MDL 1700)
PRACTICES LITIGATION                   )
                                                  )
------------------------------------------------- )
THIS DOCUMENT RELATES TO:        )
                                                  )
*Reginald Gray, et al. v. FedEx Ground*    )
*Package System, Inc.,*                         )
Civil No. 3:06-cv-00337-RLM-CAN (MO)  )
------------------------------------------------- )

## THIRD AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, by and through counsel, and on behalf of themselves and all others similarly situated, allege upon knowledge, information and belief, formed after an inquiry reasonable under the circumstances, as follows;

## PARTIES

1.      Plaintiff Reginald Gray, is a resident and citizen of the County of St.  Louis, State of Missouri, and is a driver under contract with Defendant, FedEx Ground Package System, Inc. ("FedEx Ground") from approximately March 2002 to present.

2.      Plaintiff Jammie Hill, is a resident and citizen of the County of St.  Louis, State of Missouri, and was a subcontractor driver with Defendant from approximately June 2004 through August 2004 and is under contract with Defendant FedEx Ground from approximately September 2004 to present.

3.      Plaintiff Marcus Holmes, is a resident and citizen of the County of St.  Louis, State of Missouri, and was a subcontractor driver with Defendant from October 2002 through

August 2003 and is under contract with Defendant FedEx Ground from approximately September 2003 to present.

4.     Plaintiff Roy Patton, Jr., is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately September 2003 through December 2005.

5.     Plaintiff James Tichenor, is a resident and citizen of the County of St.  Charles, State of Missouri, and is a driver under contract with Defendant FedEx Ground from approximately September 2004 to present.

6.     Plaintiff Carl Tucker, is a resident and citizen of the County of St.  Louis, State of Missouri, and is a driver under contract with Defendant FedEx Ground from approximately November 2003 to present.

7.     Plaintiff Bobby Brown, is a resident and citizen of the County of Madison, State of Illinois, and was a driver under contract with Defendant FedEx Ground from approximately June 2003 to November 2006.

8.     Plaintiff Michael Jost, is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately 1998 to 2002.

9.     Plaintiff Rich Mitchell, is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately October 2002 to August 2004.

10.     Plaintiff Mike Sheffer, is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately October 2000 to February 2006.

11.     Plaintiff John Waweru, is a resident and citizen of the County of St. Louis, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately January 2001 to February 2003.

12.     Plaintiff Kevin Pour, is a resident and citizen of the County of Monroe, State of Illinois, and was a driver under contract with Defendant FedEx Ground from approximately 1990 to September 2007.

13.     Plaintiff Jamie Tenison, is a resident and citizen of the County of Franklin, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately June 2004 to August 2006.

14.     Plaintiff Seid Huskic, is a resident and citizen of the County of St. Louis, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately September 2002 to May 2005.

15.     Plaintiff Bob Candella, is a resident and citizen of the County of Lincoln, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately April 2002 to April 2006.

16.     Plaintiff Dave King, is a resident and citizen of the County of Berkshire, State of Massachusetts, and was a driver under contract with Defendant FedEx Home Delivery from approximately October 2003 to October 2005.

17.     Plaintiff Michael Light, is a resident and citizen of the County of Phelps, State of Missouri, and is a driver under contract with Defendant FedEx Ground from approximately May 1998 to present.

18.      Plaintiff Mike Sanders, is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately 2001 to November 2003.

19.      Plaintiff Bob Arbutti, is a resident and citizen of the County of St. Louis, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately 1996 to April 2008..

20.      Plaintiff Ken Stibor, is a resident and citizen of the County of Jefferson, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately 1996 to 2006.

21.      Plaintiff Gary Austin, is a resident and citizen of the County of Lawrence, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately September 2000 to July 2007.

22.      Plaintiff Don Blackmon, is a resident and citizen of the County of Jasper, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately June 2004 to June 2007.

23.      Plaintiff Robert Hansen, is a resident and citizen of the County of St. Charles, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately March 2004 through November, 2006.

24.      Plaintiff Bob O'Keefe, is a resident and citizen of the County of St. Louis, State of Missouri, and was a driver under contract with Defendant FedEx Ground from approximately September, 2005 through the present.

25.    Plaintiff Luther McLain, is a resident and citizen of the County of Jasper, State of Missouri, and was a driver under contract with Defendant FedEx Home Delivery from approximately September, 2002 through December, 2004.

26.    Plaintiff Bob Lee Baker, was at all relevant times herein, a resident of the County of St. Louis, State of Missouri, and was a driver under contract with Defendant FedEx Home from approximately December, 2005 through March, 2008.

27.    Defendant FedEx Ground and FedEx Ground d/b/a FedEx Home Delivery, Inc. (hereafter collectively referred to as "Defendant" or "FEG" or "FedEx Ground") is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  FEG is a part of the "family" of corporations controlled by Federal Express Corporation.

28.    At all relevant times, and within five years of the filing of this Complaint, FEG was engaged in providing small package information, transportation and delivery services in the United States, including in the State of Missouri.

## JURISDICTION AND VENUE

29.    This Court has subject matter jurisdiction over all other claims asserted in this action pursuant to 28 U.S.C. § 1367.

30.    Venue is proper in the United States District Court, Eastern District, Eastern Division because Plaintiffs' causes of action arose within this district.

## INTRODUCTION

31.    Throughout most of the upper-tier parcel shipping industry, the drivers who actually pick up and deliver packages are the employees of the companies for which they drive. This is true, for example, for FedEx, the parent of Defendant FedEx Ground, and for FedEx's largest competitors.  This designation is warranted because these shippers have developed a

highly regulated set of procedures and protocols to be followed that they could not require of drivers if they were independent contractors.

32.     Virtually unique in the industry, are the drivers who deliver for Defendant FedEx Ground.   Though these drivers are similarly subject to highly-regulated control by FedEx Ground, they are nevertheless treated by FedEx Ground as independent contractors.

33.     True independent contractor status is something that was desired by the named Plaintiff, and probably most of the class of former and current FedEx Ground drivers described below.  True independent contractor status would have permitted the named Plaintiff and absent Class Members the freedom to operate their business as they see fit, and to run the risks and rewards of owning a business.   But there is nothing "independent" about the actual job requirements imposed on drivers by FedEx Ground.

34.     Accordingly, if FedEx Ground is going to treat Plaintiff and Class Members as employees, then it must compensate them as employees, as well.  Thus, this lawsuit, on behalf of the named Plaintiff and the class described below, seeks:

- •    a declaration that Plaintiff and the class were and are in fact, FedEx Ground employees; and

- •    compensation for all of the business expenses they were illegally required by FEG to bear, for all of the employment taxes, unemployment compensation and workers compensation the FEG should have but did not pay, and Plaintiffs are entitled to the quantum meruit value of their services as employees.

## FACTS

35.     FedEx Ground was spun off in 2000 from its original parent corporation, FedEx Corporation.   FedEx Ground is the second largest, small package ground carrier in North America, with about 35,000 employees and "independent contractors."

36.     Plaintiff and Class Members are/were drivers for FedEx Ground.  FedEx Ground is specifically defined in this Complaint to include all successors, predecessor and subsidiary entities to which these allegations pertain.

37.     As a condition of employment, each FEG driver is required to sign a lengthy form contract entitled the "Pickup and Delivery Contractor Operating Agreement" (hereinafter 'Operating Agreement," "OA," or "Agreement"), that mischaracterizes each driver as an "independent contractor." These Operating Agreements were designed to conceal the true nature of the relationship between FEG and its drivers: that of employer and employee.

38.     Despite Defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as Plaintiffs are entitled to the protections due employees under South Carolina law, and despite the finding of the Los Angeles Superior Court in *Estrada v. FedEx Ground Package System, Inc.* (Case # BC 210130) that these drivers are employees, Defendant continues to misc1assify their drivers as independent contractors.  As a result, these drivers are deprived of the rights and protections guaranteed by South Carolina state law to employees, and they are deprived of employer-financed workers compensation coverage and unemployment insurance benefits.  Furthermore, the terms and conditions of their employment contract require these drivers to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit and to work under other unlawful conditions.  Defendant's mischaracterization of their drivers as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and its drivers and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful and fraudulent business practice by Defendant which this Court should enjoin.

39.     Defendant has created and regularly updated a large number of written policies and procedures outside of the Operating Agreement that drivers are never given, but nonetheless are required to follow in their work.  Defendant's written policies are contained in the FedEx Ground manual, Operations Management handbook, Settlement Manual and numerous other written and extra-contractual policies that are actively concealed from drivers and which Defendant fails to disclose and/or provide to drivers that govern the relationship between Defendant and the drivers.  The other written handbooks and manuals and additional extra-contractual sources include, but are not limited, to written roles on "contractor" termination, directives and training provided to terminal managers, written roles on driver appearance (with illustrative poster), written and oral complaint procedures, memorandum and directives to terminal management and other roles concealed from and not provided to the drivers.  When drivers do not follow an FEG rule, whether disclosed or undisclosed, known or unknown, they are subject to various types of punishment, some financial and some disciplinary, up to and including contract termination and/or non-renewal.  Defendant documents such so-called violations of such rules on forms referred to as "Business Discussion Notes" and retains these documents in secret driver files called "DOT" files, along with myriad other documents which are likewise concealed from and not disclosed to the drivers.

40.     Each pick-up and delivery driver (referred to by Defendant as a "P&D contractor") must sign a "Pick-Up and Delivery Contractor Operating Agreement" and Addenda thereto (referred to hereinafter as combined as "OA' or the "Operating Agreement") as a mandatory condition of employment.  The date, time and place of execution of each driver's Operating Agreement is within the knowledge of Defendant as each Agreement is maintained in the driver files described above, in the regular course of business.  The Operating Agreement

between each member of the Plaintiff Class and Defendant is the same in all material respects. The Operating Agreement between Plaintiffs and FEG contain all of the same identical material terms with only a few, minor and insubstantial differences.

41.    The Operating Agreement contains various statements purporting to classify Plaintiffs and the Class Members as independent contractors.  At the same time, the Operating Agreement retains to the company, *inter alia*, the right to approve or disapprove any vehicle used to provide service, the right to approve or disapprove any driver or helper who provides service, the right to approve or disapprove the purchase or sale of any vehicle, the right to assign pickup and delivery stops to each driver, the right to temporarily or permanently transfer portions of any route to another with or without compensation, the right to determine when a driver has "too few" or "too many" packages to deliver on a given day, the right to inspect vehicles and rivers for compliance with Company promulgated appearance standards, the right to terminate the contract upon thirty days notice or whenever the company unilaterally determines that any provision of the contract has been "violated" amounting to the right to terminate at will, the right to require the use of communication equipment and the wearing of Company uniforms, the right to take a vehicle out of service, the right to review and evaluate "customer service" and to set and change standards of such service, the right to require drivers to perform service at "times" requested by customers and determined by Defendant, the right to withhold pay for certain specified expenses, the right to require purchase of specified insurance and numerous other purchases by drivers, the right to require completion of specified paperwork, and other rights reserved to Defendant.

42.    The Operating Agreement is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with

drivers, who are required to sign the Agreement as a condition of employment.  Plaintiffs and

Class Members are required to sign the Agreement as a condition of employment.  Plaintiffs and

Class Members are required to sign the form contract as is, without any changes made to the

terms contained therein.  Each year, drivers are required to sign additional Addenda which are

likewise not subject to negotiation and are unilaterally drafted adhesion contract provisions.  The

Agreement is, and at all material times has been unlawful, unconscionable and fraudulent in form

and effect.

   43.  Defendant's right of control over Class Members is also retained and/or exercised

by Defendant as demonstrated by concealed and/or undisclosed extra-contractual sources such as

Company written rules and policies described above and unwritten practices which supplement

and fill gaps in the written contract.

   44.  Examples of FedEx Ground's control include:

- *Minimum daily hours.*  The Plaintiff and Class Members were required to spend at least seven hours daily on the road, even if they had completed all their assigned deliveries and pickups.  Plaintiff and Class members wee docked if they left the road early, even if their deliveries are completed.

- *Required insurance.*  FedEx Ground required a certain level of auto, liability and workers' compensation insurance, and further required that Plaintiff and Class Members buy their insurance from FedEx Ground.

- *No substitute drivers.*  The Plaintiff and Class Members were not permitted to allow drivers who were not pre-approved by FedEx Ground to assume their job duties even temporarily.

- *Uniforms.*  The Plaintiff and Class Members were required to wear FedEx Ground uniforms, without any variance.  Their uniforms could only be purchased from FedEx Ground.

- *Truck decals.*  The Plaintiff and Class Members were required to decorate their trucks with the same standard issue FedEx Ground decals, which is only available from FedEx Ground.

- *Punching the clock.*   The Plaintiff and Class Members were required to electronically "punch in" at the start of their workday, and "punch out" at the

362525-5

10

conclusion.  The scanner transmits throughout the day to record the whereabouts of the Plaintiff and the Class Members.

• *Controlled departure.*  The Plaintiff and Class Members were not permitted to depart from their terminal until after the entire package sort is complete, even where Plaintiff and Class Members had loaded and readied all of their packages that they were required to deliver.  They were required to wait until FedEx Ground completed its paperwork.

• *Bonus tied to FedEx Ground performance.*  The Plaintiffs' and Class Members' bonuses were tied to the performance of FedEx Ground.

• *Authority over workdays.*  FedEx Ground had the right to order the Plaintiffs and Class Members to work holidays and days after holidays (such as the Friday after Thanksgiving).  Failure to show up to work on these required days could result in termination.

• *Authority over work assignments.*  FedEx Ground assumed complete authority over which geographical area is to be serviced by Plaintiffs and Class Members. The Plaintiffs and Class Members were not permitted to exchange those assigned geographical areas among themselves.

• *Authority over work load.*  FedEx Ground exercised total control over the workload of Plaintiffs and Class Members.

• *Authority over drop-offs and pickups.*  FedEx Ground assumed complete control over the daily drop-off and pickup assignments of Plaintiffs and Class Members. The Plaintiffs and Class Members were not permitted to informally exchange work assignments among themselves.

• *Authority over the selling of routes.*  The Plaintiffs and Class Members could not buy and sell their FedEx Ground assigned routes without prior approval by FedEx Ground.

• *No potential for entrepreneurial risks and rewards.*  The Plaintiffs and Class Members were compensated on a highly structured system that gave them no ability to exercise entrepreneurship or otherwise engage in the risks and rewards associated with owning a business.  Accordingly, Plaintiffs and Class Members were paid a daily stipend, based on their geographical area assigned by FedEx Ground, and were paid a set amount for each FedEx assigned stop, and separately for each FedEx-assigned delivered package.

• *No opportunity to sell FedEx Ground service.*  The Plaintiffs and Class Members could not take orders from customers for FedEx Ground Services.

• *No opportunity to compete.*  The Plaintiffs and Class Members could not separately offer pickup and/or delivery services independent from FedEx Ground.

- *"Company store."* The Plaintiffs and Class Members received weekly paychecks from FedEx Ground. From their total owed (assigned route stipend plus assigned stops plus completed deliveries), FedEx Ground would deduct various compulsory expenses. These business expenses are for services (such as the leasing of equipment) that Plaintiffs and Class Members could not shop around to other vendors to seek a better deal.

- *Approval requirements.* FedEx Ground required that Plaintiffs and Class Members (and those substitute drivers who Plaintiffs and Class Members would seek to occasionally assume their job duties) take and pass a FedEx Ground institutional course.

- *Port-to-port control.* The Plaintiffs and Class Members were required to begin their workday at their assigned FedEx Ground terminal.

## CLASS ALLEGATIONS

45.   Plaintiffs bring this case on behalf of the following Class:

> All current and former single work area pick-up and delivery drivers who (1) are or have been dispatched from a Missouri based terminal, and (2) performed services for FedEx Ground driving full-time (exclusive of time off for vacation and/or illness) pursuant to the terms of the Standard Contractor Operating Agreement (or, where applicable, its predecessor and/or successor) from five years prior to the commencement of this action through the present date.

The named Plaintiff fits within this description.

46.   All Class Members share an interest in ascertaining whether they should be treated as employees or as independent contractors.

47.   The named Plaintiffs will fairly and adequately represent the Class. The named Plaintiffs are members of the Class, have no interest antagonistic to the members of the Class, and have retained lawyers experienced in complex business and employment litigation including, without limitation, claims and causes of actions similar to those set forth herein, to prosecute the case.

48.   The Class is large, numbering into the hundreds at least. Accordingly, joinder is impracticable.

49.     Nevertheless, the Class is not large enough to render class treatment unmanageable.  Nearly all relevant information, e.g. the identity of those Class Members, can be found in written and electronic records of FedEx Ground.

50.     Pursuant to Fed. R. Civ. P. 23(a)(2) and (a)(3), there are questions of law or fact common to the Class, including, but not limited to:

    a.     Whether Plaintiffs and Class Members had the requisite independence and discretion to be classified as independent contractors.

    b.     Whether the uniform acts of defendant converted Plaintiffs and the Class, by law, into "employees."

    c.     Whether Plaintiffs and the Class are entitled to their overtime, at a rate of time- and- a-half for all hours worked over 40 per week.

    d.     Whether Plaintiffs and the Class are entitled to be reimbursed for business expenses that they covered.

    e.     Whether Plaintiffs and the Class are entitled to their pension and health benefits under various Defendant Plans, because they were and/or are, in fact, employees.

    f.     Whether the actions of Fed Ex Ground are applicable to the Class as a whole entitling Class Members to injunctive relief.

51.     The claims of Plaintiffs are typical of the claims of each members of the Class as a whole and are based on and arise out of identical conduct by FedEx Ground.

52.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in business and employment litigation.  Plaintiffs will fairly and adequately represent the interests of the members of the Class.

53.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.

54.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiffs seek remedies with respect to the Class as a whole.

55.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

## CAUSES OF ACTION
### COUNT I
### Illegal Deductions from Wages Under Revised Missouri Statutes

56.     Plaintiffs and the Class Members reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

57.     Plaintiffs and the Class are "employees" and are not free from the control and direction of the Defendant.

58.     Defendant unlawfully withheld and diverted monies from the compensation earned by Plaintiffs and Class Members for business expenses of Defendant, including, but not limited to, vehicle expenses, cargo claims and insurance claims in violation of Section 290.010 *et. seq*, R.S.Mo.  Plaintiffs and Class Members have not expressly and freely given written consent to such deductions, and these deductions are not made in response to a valid wage assignment or deduction order.  Such deductions were not for the Plaintiffs and Class Members benefit.

### COUNT II
### Fraudulent Misrepresentation

59.     Plaintiffs and the Class Members reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

60.     Plaintiffs and the Class Members were purportedly hired by Defendant to work as "independent contractors" pursuant to the terms of the Operating Agreement described herein above.  In fact, Defendant knew or should have known, at all times, that the "independent contractor" classification in the Operating Agreement was improper and that Plaintiffs and the

Class Members were "employees" entitled to the benefits and protections of all laws enacted for employees.  Plaintiffs are informed, believe and on that basis allege, that through the Operating Agreement Defendant intentionally misled Plaintiffs and the Class Members as to their employment status, or made such representations to Plaintiffs and the Class Members recklessly and/or negligently, and deliberately concealed from and/or failed to disclose to the pick-up and delivery drivers the extra contractual sources (including but not limited to the FedEx Ground Manual.

61.     Operation Management Handbook and Settlement Manual, other policies and secret driver files described herein above) that defined the employment relationship between Plaintiffs and Class Members and Defendant, all for the purpose of realizing unjust profits from Plaintiffs' and the Class's work and/or to avoid paying for its operating costs and payroll taxes to increase its competitiveness.

62.     At all times material herein, Defendant knew or should have known that the material representations made to Plaintiffs and the Class Members in the Operating Agreement concerning their employment status, and the concealment and/or non disclosure of material facts to Plaintiffs and the Class Members concerning their employment status and Plaintiffs' and Class Members' corresponding obligations to assume responsibility for all of their own employment-related expenses including, but not limited to, purchasing or leasing, operating and maintaining expensive trucks were false and fraudulent.

63.     At all material times, Defendant intended to and did induce Plaintiffs and the Class to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to them by Defendant in the Operating Agreement concerning their employment status and obligation to assume responsibility for all employment-related expenses

including but not limited to purchasing or leasing, operating and maintaining expensive trucks suffered damage as a direct and proximate result.

64.     By its aforesaid conduct, Defendant has been reckless and wanton and has shown complete disregard for Plaintiffs' and the Class Members' rights as protected and guaranteed by Missouri state law and other applicable law.

**COUNT III**
**Rescission of Operating Agreement**

65.     Plaintiffs and the Class Members reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

66.     Despite the express terms of the Operating Agreement, Plaintiffs' and the Class Members' relationship with FEG satisfies every aspect of the test for employment, and not for independent contractor status.

67.     FEG controls virtually every aspect of the Plaintiffs' and Class Members' work and earnings, as set forth in the general allegations in paragraphs 15 through 24 herein above.

68.     Despite this control and the actual status of the drivers as employees, FEG mischaracterizes the Plaintiffs and the Class Members as independent contractors.  As a result, these drivers must pay substantial sums of their own money for work-related expenses including, but not limited to, the purchase or lease of vehicles meeting company specifications, and all costs of operating, insuring and maintaining those vehicles.

69.     The Operating Agreement illegally and unfairly advantages FEG, by mischaracterizing the status of the Plaintiffs and the Class Members in that FEG evades employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, illegally shifting the expenses of the workers' compensation coverage and other expenses to Plaintiffs and Class Members.

70. The Operating Agreement between FEG and Plaintiffs and the Class Members is void as against public policy and therefore unenforceable, as failing to recognize the employment status of the Plaintiffs and the Class Members, and therefore denying them the legally cognizable benefits of employment.

71. The Operating Agreement between FEG and each Plaintiff and Member of the Class is an unconscionable contract of adhesion, which is enforceable as contrary to the public interest, policy and law.

72. The Operating Agreement illegally shifts the burden of certain costs that an employer must pay.

73. While acting on the direct instruction of FEG and discharging their duties for FEG, Plaintiffs and the Class Members incurred expenses for, among other things, the purchase or lease, maintenance, operating costs and adornment of vehicles, insurance, and uniforms. Plaintiffs and the Class Members incurred these substantial expenses as a direct result of performing their job duties.

74. By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay FEG's own expenses, FEG has been unjustly enriched.

75. As a direct and proximate result of FEG's conduct, FEG has received substantial benefits to which it had no entitlement, at Plaintiffs' and the Class Members' expense, including lost profits, self-employment taxes, premiums for insurance to replace workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

76.     Plaintiffs and Class Members are entitled to compensation for all of the business expenses they were illegally required by FEG to bear, for all of the employment taxes, unemployment compensation and workers' compensation the FEG should have but did not pay, and Plaintiffs and the Class Members are entitled to the quantum meruit value of their services as employees.

### COUNT IV
### Declaratory Relief Against Defendant

77.     Plaintiffs and the Class Members reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

78.     An actual controversy has arisen between the Plaintiffs and Class Members, on the one hand, and Defendant, on the other hand, relating to the following matters:

a.     Whether Defendant has unlawfully classified Plaintiffs and the Class Members as independent contractors, and have thus denied Plaintiffs and the Class Members of the common benefits of employee status, such as:

i.      wages, including overtime pay;

ii.     holiday and vacation pay;

iii.    workers' compensation;

iv.    unemployment insurance;

v.     contributions to the FEG's retirement plan;

vi.    income tax withholding; and

vii.   meal, break and rest periods.

b.     Whether Defendant has unlawfully failed to pay benefits and compensation owing in a timely manner to Plaintiffs and Class Members whose employment with Defendant ended, as required by Missouri state law.

c.     The amount of compensation and value of benefits to which Plaintiffs and Class Members are entitled to receive.

d.     The amount of interest on unpaid compensation due and owing which Plaintiffs and Class Members are entitled to receive.

e.      The amount in statutory penalties and interest which Plaintiffs and the Class Members are entitled to receive.

79.     Plaintiffs and the Class Members further seek entry of a declaratory judgment in their favor which declares Defendant's practices as heretofore alleged to be unlawful and which provides for recovery of all sums determined by this Court to be owed by Defendant, and each of them, to the Plaintiffs and the Class Members.

WHEREFORE, Plaintiffs as individuals, and on behalf of all others similarly situated, pray for the following relief:

A.      An Order permitting the Plaintiffs to give notice of this action to all persons who fit within the described Class;

B.      An Order certifying the Class as described with the named Plaintiffs as class representatives;

C.      An award to the Plaintiffs and the Class in the amount of their unpaid overtime compensation;

D.      An Order requiring FedEx Ground to reimburse and/or indemnify Plaintiffs and Class Members for the FedEx Ground business expenses that the Plaintiffs and Class Members expended;

E.      An Order requiring FedEx Ground to rescind the Operating Agreement, and awarding restitution compensating to the Plaintiffs and Class Members for the reasonable value of the benefit provided to FEG;

F.      An award of attorneys' fees, plus the costs and expenses of this action;

G.      An award of punitive damages in an amount to be proven at trial;

H.      Prejudgment interest as provided by law; and

I.      All other legal and equitable relief to which Plaintiffs and the Class Members are entitled.

//

//

//

Dated: April 15, 2010                  Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

___/s/_____
Susan E. Ellingstad
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981
Email: seellingstad@locklaw.com

Lynn Rossman Faris          Robert I. Harwood
Beth A. Ross                 HARWOOD FEFFER LLP
LEONARD CARDER, LLP      488 Madison Avenue, 8th Floor
1330 Broadway, Suite 1450     New York, NY  10022
Oakland, CA  94612         Tel:    (212) 935-7400
Tel:    (510) 272-0169        Fax:    (212) 753-3630
Fax:    (510) 272-0174        Email: rharwood@hfesq.com
Email: lfaris@leonardcarder.com
       baross@leonardcarder.com

**PLAINTIFFS' CO-LEAD COUNSEL**

John E. Toma, Jr.
Melissa M. Zensen
TOMA ZENSEN, LLC
408 North Euclid Avenue, 3rd Floor
St. Louis, MO  63108
Tel:     (314) 361-1600
Fax:     (314) 361-1612
Email: jtoma@tomazensen.com
          mzensen@tomazensen.com

**MISSOURI PLAINTIFFS' COUNSEL**

Peter J. Agostino
ANDERSON, AGOSTINO & KELLER, PC
131 South Taylor Street
South Bend, IN  46601
Tel:     (574) 288-1510
Fax:     (574) 288-1650
Email: agostino@aaklaw.com

**PLAINTIFFS' LIAISON COUNSEL**