UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC. EMPLOYMENT PRACTICES LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO: ) ) ALL CASES ) ) | CAUSE NO. 3:05-MD-527 RM (MDL-1700) |

OPINION AND ORDER

This matter is before the court on FedEx Ground Package System, Inc.'s motion to exclude the expert testimony and report of Robert Wood (doc. # 1363). The plaintiffs retained Mr. Wood, a tax attorney in private practice and the author of a treatise on independent contractors, to apply his legal expertise to render an opinion on the "proper classification of workers as employees or independent contractors." The plaintiffs rely on Mr. Wood's report in their summary judgment motions and memoranda in opposition to summary judgment to support their legal argument that FedEx, through the terms in the Operating Agreement, has retained the right to control its drivers. FedEx moves to strike the report, arguing that it's essentially a supplemental legal brief laden with legal conclusions that will determine the outcome of the case. As such, FedEx maintains that the report doesn't provide any specialized knowledge that will help this court or any trier of fact better understand the facts in issue. FedEx presents other arguments in support of its motion to strike, but the court needn't address those arguments

1

because it agrees that Mr. Wood's report impermissibly contains legal conclusions throughout, including those portions relied upon by the plaintiffs in their summary judgment briefing. The court therefore grants FedEx's motion to strike reference to the report in the plaintiffs' summary judgment motions, statement of undisputed facts, and memoranda in opposition to FedEx's motion for summary judgment. The reasoning for exclusion in this order effectively prevents Mr. Wood from offering a majority of the opinions in his report at trial, except to the extent Mr. Wood's testimony would be admissible as rebuttal evidence.

## I. BACKGROUND

The plaintiffs' expert, Robert Wood, is an attorney and a certified specialist in taxation. He is the author of *Legal Guide to Independent Contractor Status* (4th Ed., Tax Inst. 2007). During his twenty-eight years of practice, Mr. Wood has advised companies and assisted them in establishing independent contractor arrangements and has represented companies defending independent contractor arrangements before taxing and administrative bodies. Mr. Wood testified as an expert witness on rebuttal in Estrada v. FedEx Ground Package System, Inc., Case No. BC210130 (Cal. Super. Ct. 2004). The plaintiffs retained Mr. Wood on the assumption that, at trial, FedEx intends to offer the testimony of lawyers and executives who will testify regarding the meaning of the various sections of the Operating Agreement, the interplay between the Operating Agreement and the policies and procedures, the changes made to the policies and procedures, and

FedEx's intent to create a true independent contractor relationship. The plaintiffs reference Mr. Wood's report in one paragraph of the statement of undisputed facts (¶ 65), in footnotes in several of their memorandum of law in support of summary judgment, and in a few instances in opposition to FedEx's summary judgment motions.

In paragraph 65 of their SUF, the plaintiffs rely on Mr. Wood's report in support of their request to give the <u>Estrada</u> judgment preclusive effect. Paragraph 65 states: "The re-engineered policies and procedures may have changed cosmetically, but to the drivers, little has changed. . . . The policies and procedures evidence the same degree of control at issue in the <u>Estrada</u> litigation." The court already has ruled on the plaintiffs' request that the <u>Estrada</u> judgment be given preclusive effect. The court didn't address the plaintiffs' motion to strike Mr. Wood's report at that time because instead of relying on his report, the court relied on the policies and testimony presented to determine if the changes FedEx made were substantive.

In several of their memoranda in support of summary judgment and in opposition to FedEx's motions for summary judgment, the plaintiffs direct the court's attention to Mr. Wood's opinion that:

- The Operating Agreement Section 1.15's general "prohibition" against directing the manner and means is meaningless in light of the (at least 18) specific and express provisions which reserve rights of control to FedEx; express provisions which Mr. Wood opined, in his experience, he would not expect to see in

- a true independent contractor arrangement.

- There are myriad specific reservations of control over the drivers which can also be found in the policies and procedures which, despite the purported "reengineering" have changed little since [Mr. Wood] testified about them in the Estrada trial.

- FedEx's Operating Agreement contains numerous provisions inconsistent with a true independent contractor agreement.

- FedEx's plethora of rules for every step, from check-out to check-in, to scanning, to approval of truck and vans, to dress, to shaving, to hours, to hats worn during lunch, are entirely inconsistent with the independence necessary to independent contractor status.

- The Operating Agreement contains no fewer than 18 separate provisions that are inconsistent with a true independent contractor arrangement because they retain to FedEx the right to control every aspect of the drivers' work in "exquisite detail."

Accordingly, the plaintiffs only used limited portions of Mr. Wood's Report in moving for or opposing summary judgment.

The court has reviewed Mr. Wood's report in its entirety to place those statements in context. In his report, he opines that "plainly, unequivocally, and without qualification, the P&D drivers do not (and cannot) constitute *bona fide* independent contractors under any existing test for assessing worker status." Wood Report, p. 9, ¶ 1. It's the employer's right to control, Mr. Woods states, not the employer's actual exercise of that control that defines an employment relationship. Wood Report, p. 9, ¶ 2. Mr. Wood explains:

> In a case where the employer's contractual rights manifest the unequivocal right to control the method, manner and means by which the workers go about their daily tasks, it is not necessary to evaluate the extent to which the contractual right to control is

> actually exercised on a day to day basis to determine the worker's status. . . . In my opinion, FXG's reserved contractual rights over its P&D drivers obviate reference to FXG's actual patterns of practice.

Wood Report, p. 9, ¶ 3. The drivers' employment status, according to Mr. Wood, is "confirmed by both FXG's express contract rights, and by FXG's nationwide and uniform practices, although either one alone would be sufficient." Wood Report, p. 10, ¶ 6.

Based on a review of the facts presented in this litigation, Mr. Wood opines that the P&D drivers are employees regardless of which test — the common law approach, the economic realities test, a hybrid analysis, or any other prevailing test — this court applies. Wood Report, p. 12. Mr. Wood reasons that "the defendant's voluminous business records themselves are an overwhelming, incontrovertible and unequivocal testament to the employee status of these P&D drivers under any applicable legal standard." Wood Report, p. 11.

Mr. Wood discusses FedEx's retention of control in the operating agreement: "This reserved control is so strong that, in my opinion, whether FXG or FHD ever exercises it is unimportant." Wood Report, p. 15. Reiterating his testimony in Estrada, Mr. Wood indicates that the vague and ambiguous terms and phrases throughout the Operating Agreement provide FedEx with "tremendous latitude in controlling the method, manner, and means by which each P&D drivers goes about his work." Wood Report, pp. 17-18. The Operating Agreement, Mr. Wood states, "unambiguously reflect[s] employment." Wood Report, p. 18. Mr. Wood discusses FedEx's policies and procedures and presents examples of the right to

control that FedEx has reserved, including: check-out, check-in and completion procedures; uniform and vehicle appearance; customer service rides; driver release audits; and approval of all replacement drivers. Wood Report, pp. 20-25.

Mr. Wood reasons that a review of FedEx manuals, P&D driver checklists, DVDs and driving training courses "leads inevitably to employee/employer status" because the material demonstrates that FedEx "retains the right to control the method, manner and means of daily driver performance." Wood Report, pp. 28, 33. Mr. Wood further opines that the business discussions conducted by FedEx employees and used to support termination "bespeaks employment." Wood Report, p. 28. FedEx's right to control and exercise of control, according to Mr. Wood, "is consistently evidenced in its Business Discussions with its P&D drivers." Wood Report, p. 28. Mr. Wood also discusses FedEx's method of payment, right to control vehicles, right to control routes and assignments, right to control hours, and right to terminate at will. Wood Report, pp. 37-49.

FedEx doesn't challenge either Mr. Wood's qualifications or the reliability of his expert report and methods. FedEx contends that Mr. Wood's opinions on the legal standards used to classify independent contractors improperly tread on the province of the judge as the sole arbiter of the law, and would confuse the relevant law. FedEx further argues that Mr. Wood assumes the role of the fact-finder by applying his interpretation of the law to his interpretation of the facts to determine the outcome of the case. The plaintiffs respond by contending that Mr. Wood's opinions cited in support of their summary judgment memoranda aren't outcome-

determinative legal conclusions and the opinions don't attempt to interpret the Operating Agreement. Instead, Mr. Wood's opinion is merely cited for the proposition that the controls reserved to FedEx in the Operating Agreement are entirely inconsistent with independent contractor status.

## II. DISCUSSION

Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of the case. Good Shepherd Manor Found. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) (affirming district court's ruling that a law professor couldn't testify to conclusions that the city's actions violated FHAA). Expert witnesses can't testify about legal issues on which the judge will instruct the jury. United States v. Sinclair, 74 F.3d 753, 758 n. 1 (7th Cir. 1996). In RLJCS Enter. Inc. v. Prof. Benefit Trust Multiple Employer Welfare Benefit Plan and Trust, the court ruled that the expert's testimony about trust indentures, contracts, and mutual-to-stock conversions belonged in the parties' briefs, not the expert's reports. 487 F.3d 494, 498 (7th Cir. 2007). The court explained:

> Legal arguments are costly enough without being the subjects of experts' depositions and extensive debates in discovery, in addition to presentations made directly to the judge. If specialized knowledge about tax or demutualization would assist the judge, the holders of that knowledge can help counsel write the briefs and present oral argument. In this court each side is represented by two law firms, and a professor of law also has signed plaintiffs' briefs. Enough!

Id. (citations omitted). "There being only one applicable legal rule for each dispute

or issue, it requires only one spokesman of the law, who of course is the judge." Specht v. Jenson, 853 F.2d 805, 807 (10th Cir. 1988).

"[E]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact" either in understanding the evidence or determining a fact in issue. Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997). If an expert witness were permitted to testify to legal questions, then each side would find an expert who reads the law most favorably to its position and, such differing opinions regarding the applicable law would serve only to confuse the jury. Specht v. Jenson, 853 F.2d at 809. Although Rule 704 allows an expert to testify as to "an ultimate issue to be decided by the trier of fact," the advisory committee's notes state:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . .

FED R. EVID. 704, Advisory Committee Notes (1972) (citation omitted). Rule 704 requires that an expert opinion, notwithstanding that it may reach an "ultimate issue," be "otherwise admissible." FED. R. EVID. 704. An expert's opinion must, among other things, "assist the trier of fact to understand the evidence or to determine a fact in issue," within the meaning of Rule 702. FED. R. EVID. 702.

"Courts have historically refused to admit expert testimony explaining matters of domestic law, including the interpretation of contracts." Landmark

Builders, Inc. v. Cottages of Anderson, LP, No. IP 01-C-1592-C-M/S, 2003 WL 21508118, *2 (S.D. Ind. May 20, 2003) (citing cases). "The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony." Landmark Builders, Inc. v. Cottages of Anderson, LP, 2003 WL 21508118, *2-3 (prohibiting expert from opining how to interpret "substantial completion" as defined in the parties' contract) (citations omitted).

 Mr. Wood's opinions, including his opinion that the Operating Agreement contains numerous provisions inconsistent with a true independent contractor agreement, are offered on an ultimate question of law that will determine the outcome of the MDL cases. His opinions invade the province of this court to determine as a matter of law whether the Operating Agreement provides FedEx with the right to control the plaintiffs.  Expert testimony may be used to establish the meaning of an ambiguous contract term in light of the industry's custom and practice. WH Smith Hotel Serv., Inc. v. Wendy's Int'l, Inc., 25 F.3d 422, 429 (7th Cir. 1994) (finding no error in admitting expert testimony regarding customary and usual meaning of rent provisions in the commercial real estate industry). Mr. Wood, however, doesn't offer explanations of ambiguous contract terms in light of a specific industry's custom or practice. Instead, he has opined that even though Section 1.15 of the Operating Agreement prohibits FedEx from directing the manner or means of the contractor's work, the clause is meaningless because the other provisions expressly reserve to FedEx the right to control the

9

contractor's work. Mr. Wood bases his opinion on his legal experience and his interpretation of the law on independent contractor status as applied to the facts presented in this case.

Whether the contract allows FedEx to control the manner and means of the work is a legal question for the court and isn't the proper subject of expert testimony. If the court finds that the parties' summary judgment motions can't be determined as a matter of law, Mr. Wood's legal conclusions, which comprise a majority of his expert report, wouldn't assist the jury in understanding the evidence or in determining the facts at issue because they simply tell the jury what result to reach. Further, and independently, the potential for jury confusion attendant to such testimony warrants exclusion pursuant to Federal Rule of Evidence 403. This is evident from a general review of Mr. Wood's report, which essentially echoes the plaintiffs' briefs. Mr. Wood's interpretation of the law on independent contractor status and conclusion that FedEx drivers aren't employees isn't a proper subject for expert testimony.

### III. CONCLUSION

The court GRANTS FedEx's motion to exclude Mr. Wood's report for summary judgment purposes. This decision is without prejudice to the possibility that the court could revisit the admissibility of limited portions of his report if the plaintiffs believe they are essential at later stages of this case, keeping in mind the court's reasoning in excluding his report at this stage in the proceeding.

SO ORDERED.

ENTERED:  May 4, 2010

                                            /s/ Robert L. Miller, Jr.
                                        Robert L. Miller, Jr., Judge
                                        United States District Court