# EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

|  |  |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | Case No. 3:05-MD-527-RM (MDL 1700) |
| THIS DOCUMENT RELATES TO: | |
| *Tina Floyd, et al. v. FedEx Ground Package System, Inc.*, No. 3:06-cv-00428-RLM-CAN (AL) | CHIEF JUDGE MILLER |
| *Bruce Gentle, et al. v. FedEx Ground Package System, Inc.*, No. 3:08-cv-00191-RLM-CAN (AL) | MAGISTRATE JUDGE NUECHTERLEIN |

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement shall constitute the full Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") between Tina Floyd, Bruce Edwin Gentle, and Stephanie Sullins Gentle (the "Plaintiffs"), on behalf of themselves and the Certified Class, as defined below, and Defendant FedEx Ground Package System, Inc. ("FXG"), collectively, the "Parties," to settle, fully and finally, all of the Released Claims (as defined below).

A.     Certain disputes and differences have arisen between the Parties concerning FXG's classification of package delivery drivers as independent contractors instead of employees. Plaintiffs allege that based upon this employment classification, they and the members of the Certified Class were, among other things, unlawfully deprived of the benefits of various labor, employment, and/or consumer protection laws, were deprived of various rights under the common law, were not paid all wages due, and bore expenses that should have been borne by FXG.

B.     *Tina Floyd, et al. v. FedEx Ground Package System, Inc.*, Case No. 3:06-cv-00428-RLM-CAN (AL), and *Bruce Gentle, et al. v. FedEx Ground Package System, Inc.*, Case No. 3:07-cv-00191-RLM-CAN (AL) (the "Lawsuits"), are currently pending as part of multi-

district litigation proceedings (the "MDL") in the United States Court of Appeals for the Seventh Circuit on appeal from the United States District Court for the Northern District of Indiana, South Bend Division (the "MDL Court"). In the operative Class Action Complaints, filed on May 11, 2006 and February 28, 2007, respectively (the "Operative Complaints"), Plaintiffs brought six claims for relief against FXG: (1) Violations of the Alabama Deceptive Trade Practices Act; (2) Fraud; (3) An Accounting Against Defendant; (4) Rescission of Operating Agreement; (5) Declaration Relief Against Defendant; and (6) Request for Injunctive Relief. FXG denies all of the allegations asserted in the Lawsuits and denies that it has committed any violation of law, misconduct, wrongdoing, or any other actionable conduct, and also denies that it has misclassified the Plaintiffs or the members of the Certified Class.

C.      The MDL Court certified Plaintiffs' claims pertaining to: (1) An Accounting Against Defendant; (2) Rescission of Operating Agreement; (3) Declaratory Relief; and (4) Request for Injunctive Relief. Plaintiffs did not seek to certify their claims for violations of the Alabama Deceptive Trade Practices Act or for Fraud.

D.      On April 25, 2008, the Plaintiffs filed a motion for summary judgment solely on the question of employment status. On December 13, 2010, the MDL court issued an Opinion and Order denying summary judgment to Plaintiffs and granting summary judgment to FXG for all of Plaintiffs' claims finding that Plaintiffs and Class Members are independent contractors under Alabama law. (Doc. 161 at 24).

E.      On December 30, 2010, Plaintiffs filed a notice of appeal seeking reversal of the MDL Court's judgment on employment classification (Doc. 164). Plaintiffs' appeal was consolidated with appeals stemming from the MDL Court's summary judgment decisions in related cases, but briefing in their appeal was suspended pending further court order. On October 28, 2015, the Seventh Circuit Court of Appeals extended the suspension of briefing pending further court order (No. 11-1022, Doc. 56).

F.      This Agreement is made in consideration of the facts and recitals set forth herein. The Parties understand, acknowledge, and agree that this Agreement constitutes a compromise of all the disputed claims at issue in the Lawsuits and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Lawsuits and of the Released Claims of the Named Plaintiffs individually, and the Certified Class, including all costs and attorneys' fees incurred.

G.      Named Plaintiffs and Class Counsel: (1) have examined and considered the benefits to be provided to Class Members under the settlement provided for in this Agreement (the "Settlement," as defined below); (2) have considered the applicable law and the claims that have been and could have been asserted in the Operative Complaint arising out of or relating to the allegations of misclassification of the members of the Certified Class as independent contractors; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of the Certified Class, taking into account the benefits provided to the members of the Certified Class through the terms of the Settlement Agreement, the decisions rendered in the Lawsuits, the risks of litigation, and the length of time that would be required to complete the litigation and any appeals.

H.      The Parties further acknowledge that this Settlement is a compromise of disputed claims and that FXG is not in any way admitting liability by entering into this Agreement. FXG has at all times disputed, and continues to dispute, the allegations in the Lawsuits and denies any liability for any of the claims that have or could have been raised in the Lawsuits regarding the classification of the Named Plaintiffs and the members of the Certified Class as independent contractors, but believes that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

I.      The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors, and will materially benefit the members of the Certified Class. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Lawsuits through the existing appeal, any potential trial if the case is remanded, and any further appeals following trial. Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Lawsuits.

Therefore, in consideration of the promises and agreements contained herein, the Parties agree and covenant as follows:

## I.      DEFINITIONS

As used in this Agreement, the following definitions (in addition to those set forth elsewhere herein) shall apply:

A.      "Administration Expenses" means reasonable fees and expenses incurred by the Settlement Administrator for: (1) preparation and mailing of the Settlement Notices and Forms; (2) preparation and mailing of the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715; (3) receipt and adjudication of Forms submitted by Class Members relating to the payment of settlement funds to them under this Settlement Agreement; (4) processing objections to this Settlement; (5) establishment and maintenance of the Class Settlement Fund, which is intended to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, as described in Section III.A. below; (6) preparing and filing federal income tax returns for the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law; (7) paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund; (8) preparing, filing, and issuing all necessary tax reporting forms for the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Class Members, Class Counsel, and Named Plaintiffs; (9) providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities; (10) mailing of settlement payments to Eligible Class Members; (11) mailing of payment(s) for attorneys' fees and costs to Class Counsel; (12) mailing of incentive awards to Named Plaintiffs; and (13) performance of any other actions specified in this Agreement or mutually requested by the Parties in writing.

3

B.        "Certified Class," or "Class," means: "All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from May 11, 2000 through October 15, 2007, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Alabama."

For the purposes of this definition, and with regard to the terms of this Settlement Agreement, "persons" shall be defined to include both individuals who contracted in their own name and individuals who were the authorized officer or owner of any business entity (whether partnership, limited liability company, sole proprietorship, corporation, or other business structure) who were signatories to operating agreements with FXG during the specified time period. It shall also include business entities (of whatever type and whenever formed) which entered into, or assumed an assignment of, an FXG Operating Agreement where the authorized officer or owner of the business entity is or was a Named Plaintiff or Class Member.

C.        "Class Member" means, individually or collectively depending on whether the singular or plural is used, any individual or business entity meeting the qualifications set forth in Section I.B. above, and/or any individual or business entity who was a signatory to an FXG Operating Agreement during the Class Period who the Parties otherwise agree shall be considered a member of the Class. A preliminary list of Class Members in the Lawsuits is attached to this Agreement as **Exhibit 1**. Notwithstanding the list attached to the Agreement, nothing shall prevent the Parties, through their counsel, from mutually agreeing to subsequently modify the list of Class Members to correct errors or omissions therein.

D.        "Class Counsel" means Beth A. Ross of Leonard Carder LLP, Susan Ellingstad of Lockridge Grindal Nauen PLLP, and Robert Harwood of Harwood Feffer LLP. Alabama counsel are Christopher D. Glover of Beasley, Allen, Crow, Methvin, Portis & Miles, PC, R. Christopher Gilreath of Gilreath & Associates, J. Allen Brinkley and John A. Brinkley, Jr. of Brinkley & Chestnut.

E.        "Class Period" refers to the time period from May 11, 2000 through October 15, 2007.

F.        "Class Settlement Fund" means the fund that will be established and maintained to resolve the claims at issue, as described in Section III.A. below, and which is intended to be a qualified settlement fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1.

G.        "Effective Date" means the first business day after the following has occurred: (i) 45 days have elapsed from the entry by the Court of the Final Approval Order in the Lawsuits and the judgment thereon, and no notice of appeal of the judgment or any Order in the Lawsuits has been filed, the time provided for in Rule 4 of the Federal Rules of Appellate Procedure to take any such appeal has expired, and any right to take any such appeal from the judgment or from any such Order has been waived or otherwise lost; or (ii) if an appeal has been taken, each such appeal has been finally adjudicated and the Final Approval Order and judgment have been

4

upheld in all respects by each such final adjudication, and either the time for initiation of the next step in the appellate process (e.g., a petition for writ of certiorari) has expired without any action by appellant(s) or the next step in the appellate process was invoked and has been concluded without any impact on the Final Approval Order or judgment.

H.    "Fairness Hearing" means the final hearing, to be held after notice has been provided to the Class Members in accordance with Section IV of this Agreement, to determine whether to issue an indicative order that the Court would grant final approval to the Settlement and enter the Indicative Final Approval Order.

I.    "Final Approval Order" means the order to be entered in the Lawsuits, which is substantively identical to the Indicative Final Approval Order defined below, and is entered by the Court after the limited remand of the Lawsuits by the Seventh Circuit as requested by the parties pursuant to Federal Rule of Appellate Procedure 12.1.

J.    "Indicative Final Approval Order" means the proposed Order Indicating Intention to Grant Final Approval to the Class Action Settlement Agreement and Entry of Final Judgment, to be entered by the Court in the Lawsuits with the terms and substantially in the form of **Exhibit 2** to this Agreement.

K.    "Form W-9" means the Internal Revenue Service's Form W-9 (Request for Taxpayer Identification Number and Certification).

L.    "Notified Class Member" means a Class Member who, prior to execution of this Settlement Agreement, received notice of his/her/its membership in the Certified Class and did not opt out in the manner and time prescribed by the MDL Court.

M.    "Unnotified Class Member" means a Class Member who is not a Notified Class Member.

N.    "Class and Settlement Notices" means, individually or collectively as the context may indicate, the proposed written notices attached hereto as **Exhibit 3**, to be approved by the Court and mailed to Unnotified Class Members.

O.    "Exclusion Request" means a request to opt out of the Certified Class by any Unnotified Class Member.

P.    "Settlement Notice" means, individually or collectively as the context may indicate, the proposed written notices attached hereto as **Exhibit 3 and 4**, to be approved by the Court and mailed to Class Members in accordance with Section IV of this Agreement.

Q.    "Named Plaintiffs" means the named plaintiffs in the Lawsuits, both in their capacity as representatives of the Class Members, and individually, depending on whether the passage refers to the individual, as opposed to representative, claims.

R.    "Indicative Preliminary Approval Order" means the proposed Order Indicating Intention to Grant Preliminary Approval to Class Action Settlement Agreement, to be entered by the Court in the Lawsuits with the terms and substantially in the form of **Exhibit 5** to this Agreement.

S.    "Released Claims," as to Named Plaintiffs and all Class Members in these Lawsuits, means all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which: (i) are owned or held by Named Plaintiffs and Class Members and/or by their affiliated business entities (if any), or any of them, as against Releasees, or any of them; (ii) arise under any statutory or common law claim which was asserted in the Lawsuits or, whether or not asserted, could have been brought arising out of or related to the allegations of misclassification of Named Plaintiffs and Class Members as independent contractors set forth in the Operative Complaints, and (iii) pertain to any time in the Release Period. The Released Claims include any known or unknown claims for damages and injunctive relief. The Released Claims include but are not limited to claims under the Alabama Deceptive Trade Practices Act, the Declaratory Judgment Act, 28 U.S.C. § 2201, and common law claims for fraud, breach of contract, rescission, unjust enrichment, or declaratory judgment. Notwithstanding the foregoing, the Released Claims specifically exclude claims arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

Released Claims, with respect to the Named Plaintiffs in their individual, as opposed to representative, capacity also includes any and all claims, actions, causes of action, administrative claims, demands, charges, debts, damages, penalties, interest, costs, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that a Plaintiff, on behalf of himself or herself and on behalf of any related or associated business entities (including any entity for or through which Plaintiffs have provided pickup and delivery services to FXG), had, has or could have had against the Releasees by reason of any act, omission, harm, matter, cause, or event whatsoever, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, arising at any time in the Release Period, for any type of relief, including without limitation wages, pay, unpaid/unreimbursed costs, deductions, penalties, general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.

The Released Claims include any known or unknown claims for damages or injunctive relief relating to claims described herein. Specifically Plaintiffs and all Class Members in exchange for the valuable consideration offered herein, on their own behalf, and on behalf of any corporation, limited liability company, sole proprietorship, and any other business entity with which they have an ownership interest, hereby expressly waives any and all rights and benefits conferred upon them by Section 1542 of the California Civil Code and expressly consents that this Agreement (including, without limitation, the Release set forth herein) shall be given full force and effect according to each and all of its express terms and provisions, including those

6

related to unknown and unsuspected claims, if any, as well as those relating to any other claims hereinabove specified. Section 1542 provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

T.    "Releasees" means: (a) FXG, and its consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees; and (b) FXG's past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers.

U.    "Release Period" refers to the time period from May 11, 2000 through April 30, 2016.

V.    "Settlement" means collectively the rights and duties of the Parties under this Agreement and the processes for approval and payment to Class Members described in this Agreement.

W.    "Settlement Administrator" means the qualified firm approved by the Court to administer the Settlement and the Class Settlement Fund as described in Section III.A. of this Agreement.

X.    "Settlement Payment" means the amount set forth in Section III.A. of this Agreement that FXG will transfer to the Class Settlement Fund to resolve the Released Claims.

## II.    REQUIRED EVENTS

The events set forth in this Section II, in addition to the occurrence of the "Effective Date" as described in Section I, are conditions precedent to this Agreement becoming effective.

Within 30 days of the execution of the Agreement by the Plaintiffs and FXG, the Plaintiffs shall file the Agreement with the Court and move for entry of the Indicative Preliminary Approval Order, substantially in the form of **Exhibit 5** hereto, which by its terms shall accomplish all of the following:

1.    Preliminarily approve this Settlement as fair, reasonable, and adequate to the respective Class Members.

2.    Designate Rust Consulting as the Settlement Administrator, and approve it to perform the following functions in accordance with the terms of this Agreement, the Indicative Preliminary Approval Order, and the Indicative Final Approval Order:

a.    Provide for the Settlement Notices (with the Fairness Hearing dates) in a form substantially the same as the documents attached hereto as **Exhibit 3**

**and 4** to be sent by mail to all Class Members that can be identified through a reasonable effort;

b.      Provide for the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, substantially in the form attached hereto as **Exhibit 6**, to be mailed in accordance with the provisions of CAFA to the appropriate federal and state officials identified in **Exhibit 6**;

c.      Provide to FXG and Class Counsel, 14 days after the first mailing of the Settlement Notice for the Lawsuits and then updated every 14 days thereafter: (i) a list of the names and addresses of all Class Members whose Notices have been returned to the Settlement Administrator as undeliverable along with a report indicating steps taken by the Settlement Administrator to locate updated address information for such class members and to resend the Notices, and/or whose Notices have been forwarded to an updated address by the United States Postal Service ; (ii) a separate list of the names and addresses of all Class Members who have submitted documents indicating that they wish to object to the Settlement; (iii) a separate list of the names and addresses of all Class Members who have submitted documents indicating that they wish to challenge the Payment Calculations along with copies of all such documents; and (iv) a separate list of the names and addresses of all Unnotified Class Members who have submitted Requests for Exclusion from the class and the settlement, if any;

d.      Process and adjudicate challenges to the Payment Calculations and process objections to the Settlement in accordance with Section VI of this Agreement;

e.      Mail settlement payments to Class Members, as ordered by the Court in the Indicative Final Approval Order, in accordance with Section III of this Agreement;

f.      Mail payment(s) for attorneys' fees and costs to Class Counsel, as ordered by the Court in the Indicative Final Approval Order, in accordance with Section VII of this Agreement;

g.      Mail incentive awards to Plaintiffs, as ordered by the Court in the Indicative Final Approval Order, in accordance with Section VII of this Agreement;

h.      Mail payments of unclaimed settlement funds to the designated *cy pres* beneficiaries, if any, as ordered by the Court in the Indicative Final Approval Order in accordance with Section III of this Agreement;

i.      Establish, designate, and maintain a Class Settlement Fund for both Lawsuits as a "qualified settlement fund" under Internal Revenue Code

8

§ 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims in the Lawsuits;

j. Maintain the assets of the Class Settlement Fund in a non-interest bearing escrow account segregated from the assets of FXG and any person related to FXG;

k. Obtain employer identification numbers (EINs) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4);

l. Prepare and file federal income tax returns for the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law;

m. Cooperate with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date;

n. Pay and deposit the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund;

o. Prepare, file, and issue all necessary tax reporting forms for the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to the Class Members, Class Counsel, and Named Plaintiffs;

p. Provide FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities;

q. Pay any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund solely from the assets of the Class Settlement Fund without any recourse against FXG for additional monies;

r. Within 15 days after the second round distribution of settlement payments have been made, provide to FXG and Class Counsel the total dollar amount paid to each Class Member (the "Final Accounting");

s. Liquidate any remaining assets of the Class Settlement Fund after all payments to the Class Members, Class Counsel, and Named Plaintiffs have been made and all tax obligations have been satisfied, and distribute the remainder of the fund's assets to the designated *cy pres* beneficiar(ies) or as may otherwise be directed by the Court; and

9

t.      Petition the Court for termination of the Class Settlement Fund once all of the duties listed above in subsections (a) to (u) have been completed for that fund.

3.      Approve reasonable compensation and costs to the Settlement Administrator in accordance with the terms of **Exhibit 7** hereto.

4.      Approve the "§ 1.468B-3 Statement" for the Class Settlement Fund that FXG will provide to the Settlement Administrator by February 15 of the year following the calendar year in which FXG transfers the Settlement Payment to the Class Settlement Fund.

5.      Approve the form, contents, and methods of notice to be given to the Class Members as set forth in Section IV of this Agreement, and direct the Settlement Administrator to provide such notices.

6.      Establish procedures and deadlines for Class Members to object to the Settlement and to challenge the Payment Calculations, all consistent with Sections III and VI of this Agreement, and with Section II of this Agreement.

7.      Schedule deadlines for the filing of (a) objections to the Settlement, and (b) papers in support of final approval of the Settlement.

8.      Schedule the Fairness Hearing for a date which is no sooner than 180 days after the Court enters an order preliminarily approving the proposed class settlement described in this Settlement Agreement.

At the Fairness Hearing, the Plaintiffs will request the Court to enter the Indicative Final Approval Order for the Lawsuits, substantially in the form of **Exhibit 2** hereto, which: (1) grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Class Members; (2) provides for the release of all Released Claims and enjoins any and all Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) orders the dismissal with prejudice of all Released Claims, and incorporates the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear its, his, or her own costs and attorneys' fees (except as provided in Section IV of this Agreement); (4) authorizes the Settlement Administrator to issue settlement payments to Class Members in accordance with the terms of this Agreement; (5) authorizes the payment of incentive awards to each of the Named Plaintiffs as detailed in Section VII of this Agreement; and (6) retains the Court's jurisdiction over the administration of the Settlement and enforcement of this Agreement.

Named Plaintiffs, Class Counsel, and FXG will cooperate and take all reasonable actions to accomplish the above, including any actions necessary to secure a limited remand of the Lawsuits for the purpose of finally approving the Settlement after the indicative ruling has been entered. If the Court fails to enter the Indicative Preliminary Approval Order or the Indicative Final Approval Order substantially in the form submitted by the Parties, Plaintiffs, Class Counsel, and FXG will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Indicative

Preliminary Approval Order and Indicative Final Approval Order, the Parties will return to their prior positions in the Lawsuits in accordance with Section XII.A. of this Agreement.

The Settlement Administrator will sign a written acknowledgement and acceptance of its duties in the form of **Exhibit 8** hereto.

## III.    PAYMENT TO CLASS SETTLEMENT FUND AND PROCEDURES FOR PROVIDING PAYMENTS TO CLASS MEMBERS

### A.    Payment to Class Settlement Fund

The Settlement Payment that FXG will transfer to the Class Settlement Fund for the Lawsuits is $3,200,000.00 (the "Settlement Payment"). No later than ten business days after the Effective Date, and in accordance with the other terms of this Agreement and its exhibits, FXG shall transfer the Settlement Payment to the Class Settlement Fund to resolve the Released Claims of Named Plaintiffs and Class Members for these Lawsuits.

The Parties intend the Class Settlement Fund to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1. Accordingly, FXG shall retain no rights or reversionary interests in the Settlement Payment once transferred to the Class Settlement Fund. Furthermore, FXG's obligation to make the Settlement Payment is contingent on (i) the Court's entry of the Indicative Preliminary Approval Order appointing the Settlement Administrator and approving the Settlement Administrator to establish and maintain the Class Settlement Fund for the Lawsuits; and (ii) the court's entry of the Final Approval Order releasing and dismissing with prejudice all of the Released Claims. Under no circumstances shall FXG be required to pay more under this Settlement than the amount of the Settlement Payment as set forth herein. The Class Settlement Fund is a common fund that includes respective Class Counsel's fees and costs as described more fully in Section VII.A. of this Agreement as well as the incentive award payments to Named Plaintiffs as described more fully in Section VII.B. of this Agreement.

### B.    Payment Calculations for Class Members

Class Counsel shall make and submit to the Settlement Administrator and FXG their final Payment Calculations no later than thirty (30) business days after entry by the Court of the Final Approval Order. The Payment Calculations shall take into account available information regarding the length of time each claimant provided services under contract to FXG during the Release Period, and the amount of each claimant's *pro rata* share of the attorneys' fees and costs to be paid to Class Counsel. Class counsel shall use a workweek formula for workweeks in which Class Members meet the class definition, and shall allocate a lower amount for workweeks in which Class Members do not meet the class definition. The minimum payment to each Class Member is $250. Class Counsel assume and accept all responsibility and liability associated with their Payment Calculations.

If any Class Member does not collect his or her settlement payment by cashing the settlement payment check sent to him/her by the Settlement Administrator within 180 days after the date the check is issued, then the amount of the Class Settlement Fund allocable to that Class Member shall be re-allocated on a *pro-rata* basis to the Class Members who do collect their

settlement payments by cashing their settlement payment checks within 180 days after the date the checks are issued, which sum shall be remitted to such Class Members in a second round distribution of the Class Settlement Fund. For purposes of the second round distribution, each eligible Class Member's *pro rata* portion of the unclaimed funds shall be equal to that Class Member's proportionate share of the Class Settlement Fund allocable to all Class Members who collected their settlement payments during the first round distribution by cashing their settlement payment checks within 180 days. Although Class Members who do not cash the settlement checks sent to them within 180 days will not receive a settlement payment under this Agreement, they shall still be bound by the other provisions of this Agreement, including without limitation the release of claims provided in this Agreement.

### C.    *Cy Pres*

Upon occurrence of the Effective Date, the Settlement Administrator shall distribute settlement payments in accordance with Section III of the Agreement. To the extent checks are not cashed within one hundred and eighty (180) days following the second round distribution, these funds shall be deposited with an appropriate non-profit legal services entity that provides service within the state. This recipient shall be mutually agreed upon by the Parties.

### D.    Settlement Administrator's Duties

The Settlement Administrator shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Indicative Preliminary Approval Order and Indicative Final Approval Order in the Lawsuits:

1.    Mailing, by first-class United States Mail, the Settlement Notice (with the Fairness Hearing date and deadlines established by the Court in the Indicative Preliminary Approval Order) to all Class Members who can be identified through a reasonable effort.

2.    Notifying the appropriate federal and state officials under CAFA.

3.    Providing to FXG and Class Counsel a list of the names and addresses of all Class Members who have submitted documents indicating that they wish to object to the Settlement.

4.    Providing to FXG and Class Counsel a list of the names and addresses of all Unnotified Class Members who have submitted Requests for Exclusion.

5.    Processing objections to the Settlement, including challenges to the Payment Calculations.

6.    Submitting the Named Plaintiffs' and Class Members' taxpayer identification numbers, as provided by FXG to the Settlement Administrator, to the Internal Revenue Service taxpayer identification number matching service, and obtaining (prior to issuing payment) an executed Form W-9 from each Named Plaintiff and/or Class Member whose taxpayer identification number either does not result in a match in the above-referenced IRS process or was not available from FXG's records.

7.      Mailing, by first-class United States Mail, settlement payments to Named Plaintiffs and Class Members in accordance with the Payment Calculations for each such Class Member provided to the Settlement Administrator by Class Counsel.

8.      Mailing, by first-class United States Mail, payment(s) for attorneys' fees and costs to Class Counsel.

9.      Mailing, by first-class United States Mail, incentive awards to Named Plaintiffs.

10.     Establishing and maintaining the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Named Plaintiffs and Class Members.

11.     Maintaining the assets of the Class Settlement Fund in a non-interest bearing escrow account segregated from the assets of FXG and any person related to FXG.

12.     Obtaining an employer identification number (EIN) for the Class Settlement Fund.

13.     Preparing and filing federal income tax returns in the name of the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law.

14.     Cooperating with FXG to jointly file a relation-back election, if necessary.

15.      Paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund.

16.     Preparing, filing, and issuing all necessary tax reporting forms in the name of the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Class Members, Class Counsel, and Named Plaintiffs.

17.     Providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities.

18.     Paying any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund. Any such tax payment shall be made solely from the assets of that Class Settlement Fund without any recourse against FXG for additional monies.

19.     Providing the Final Accounting to FXG and Class Counsel.

20.    Liquidating any remaining assets of the Class Settlement Fund after all payments to the Class Members, Class Counsel, and Named Plaintiffs have been made and all tax obligations have been satisfied, and distributing such assets as directed by the Court.

21.    Petitioning the Court for termination of the Class Settlement Fund once all of the duties listed above in subsections (1) to (20) have been completed.

### E.    Payment to Named Plaintiffs and Class Members

Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as thereafter reasonably practicable, but within no more than 45 additional business days: mail, by first-class United States Mail, to Named Plaintiffs and Class Members checks in the amounts determined by Class Counsel pursuant to Section III.B. of this Agreement and drawn on the account of the Class Settlement Fund. To the extent checks are not cashed within one hundred and eighty (180) days, the remaining funds shall be distributed to Named Plaintiffs and Class Members who cashed their settlement checks within the 180 day period in *pro rata* shares, as described in Section III.B. above in a second round distribution. To the extent checks issued in the second round distribution are not cashed within one hundred and eighty (180) days, amounts remaining in the Class Settlement Fund shall be deposited with the *cy pres* recipient specified in Section III.C. of this Agreement.

### F.    Settlement Administrator's Acceptance of Duties and Compensation

The Settlement Administrator will sign a written acknowledgment and acceptance of its duties in the form of **Exhibit 8** hereto. The Settlement Administrator will receive reasonable compensation and costs in accordance with the terms of **Exhibit 7** hereto.

If FXG reasonably believes or suspects that the Settlement Administrator is failing to perform its duties, FXG shall have a right to petition the Court for a remedy.

## IV.    SETTLEMENT NOTICE

The parties agree that the Settlement Notice provides information sufficient to inform the Class Members of the material terms of this Settlement, the appropriate means for obtaining additional information regarding this Agreement and the Lawsuits, the appropriate means for and information about obtaining a settlement payment pursuant to the Settlement. To facilitate the efficient administration of this Settlement, and to facilitate the making of settlement payments to Class Members under the Settlement, the Settlement Administrator will be directed to provide all Class Members with copies of the Settlement Notice pertaining to the Lawsuits, as well as contact information for the appropriate Class Counsel in the event they have questions. Plaintiffs will request the Court to approve the Settlement Notice and Forms in the Indicative Preliminary Approval Order.

As soon as practicable, but no later than 60 days after the Court's entry of the Indicative Preliminary Approval Order unless otherwise ordered by the Court, the Settlement Administrator shall send or cause to be sent, by first-class United States Mail, a copy of the Settlement Notice and Forms to every Class Member who can be identified through reasonable effort. Before the

mailing of such Settlement Notice and Forms, the Settlement Administrator will obtain or cause to be obtained address updates utilizing a national change of address database.

The parties agree that the dissemination of the Settlement Notice and Forms by mail in the manner specified in this Section IV satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs will request the Court to approve, in the Indicative Preliminary Approval Order, the direct mailing of the Settlement Notice and Forms as set forth in this Section IV.

## V.    COSTS OF NOTICE AND CLAIMS ADMINISTRATION

The Parties agree that (a) all costs of preparing and disseminating the Settlement Notices and Forms provided for in Section IV of this Agreement, and (b) all other Administration Expenses, including payments made for the services of the Settlement Administrator, shall be paid from the Class Settlement Fund. Unless otherwise specifically agreed in writing, FXG shall not be responsible for any cost that may be incurred by, on behalf of, or at the direction of Plaintiffs or Class Counsel in (a) defending the Agreement or the Settlement against any challenge to them, (b) defending against any challenge to any order or judgment entered pursuant to the Agreement, or (c) for any other reason.

## VI.    PROCEDURES FOR SETTLEMENT APPROVAL

### A.    Preliminary Approval

Plaintiffs shall, within 30 days of the execution of this Agreement by all Parties, move the Court to enter the Indicative Preliminary Approval Order. The proposed deadlines to be established in the Indicative Preliminary Approval Order are as follows, unless otherwise ordered by the Court:

1.    60 days after entry of the Indicative Preliminary Approval Order: Date on or before which Settlement Notices will be mailed to Class Members.

2.    60 days after mailing of the Settlement Notices: Date on or before which challenges to the Payment Calculations must be filed with the Settlement Administrator and served on Class Counsel and FXG; Date on or before which Unnotified Class Members must file Requests for Exclusion with the Court and served on Class Counsel and FXG; and Date on or before which objections to the Settlement, the Agreement, or the amount of fees and expenses that Class Counsel has requested, together with all supporting memoranda and other material, must be filed with the Court and served on Class Counsel and FXG.

3.    30 days before the Fairness Hearing: Date on or before which any person or attorney seeking to appear at the Fairness Hearing, for the purpose of objecting to the Settlement, the Agreement, or the amount of fees and expenses that Class Counsel has requested, must file with the Court and serve on Class Counsel and FXG an entry of appearance in the Lawsuits and notice of intention to appear at the Fairness Hearing.

4.      The parties will coordinate with the Court to set a date for the Fairness Hearing that is no sooner than 180 days after the Court enters an order indicating its willingness to preliminarily approve the proposed class settlement described in this Settlement Agreement.

## B.      Final Approval

At the Fairness Hearing, Plaintiffs shall request the Court to enter the Indicative Final Approval Order, substantially in the form of **Exhibit 2** to this Agreement, which: (1) grants final approval to the Settlement and this Agreement as fair, reasonable, and adequate to the Certified Class; (2) provides for the release of all Released Claims and enjoins Named Plaintiffs and Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) orders the dismissal with prejudice of all Released Claims, and incorporates the releases and covenant not to sue stated in this Agreement, with each of the parties to bear its or their own costs and attorneys' fees, except as provided in Section VII below with respect to attorneys' fees and costs; (4) authorizes the Settlement Administrator to issue settlement payment checks to Named Plaintiffs and Class Members in accordance with the terms of this Agreement; (5) authorizes the payment of each Class Counsel's attorneys' fees and costs as detailed in Section VII below; (6) authorizes the payment of incentive awards to each of the Named Plaintiffs as detailed in Section VII below; and (7) preserves the Court's continuing jurisdiction over the administration of the settlement and enforcement of the Agreement.

## VII.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARD TO NAMED PLAINTIFFS

A.      FXG shall not oppose Class Counsel's request for attorneys' fees and costs of up to 30% of the Class Settlement Fund covering all legal services provided by MDL Counsel in the past and future to the members of the Certified Class in connection with the Lawsuits (whether before the MDL Court or this Court), the settlement of the Lawsuits, any appeal in connection with the Settlement, implementation of the Settlement, or otherwise (the "Fee and Expense Application"). Class Counsel will allocate attorneys' fees approved by the Court pursuant to this Fee and Expense Application to the MDL counsel who commenced the Lawsuits and/or performed work on the MDL cases at the direction of Class Counsel. The MDL Court or its designee will retain jurisdiction to address all issues or disputes surrounding the allocation of attorneys' fees.

B.      FXG shall not oppose Class Counsel's request for an incentive award to Named Plaintiffs for up to $15,000 for each Named Plaintiff above what each is otherwise eligible to receive under Section III of this Agreement. The incentive awards shall be paid from the common Class Settlement Fund.

C.      The agreed amounts set forth above in this Section will be subject to Court approval, which approval shall be stated in the Final Approval Order of the Court. Upon the Effective Date, the Settlement Administrator shall, as soon as practicable, but within no more than thirty (30) days, pay to Class Counsel and Named Plaintiffs those amounts specified above, as approved by the Court. Class Counsel shall provide to the Settlement Administrator in a timely manner all information needed with respect to the issuance of the checks for those

amounts, including their and Plaintiffs' tax identification/Social Security numbers on Form W-9. The Settlement Administrator shall have no obligation to make payments under this Section until such information is received.

If any notice of an appeal from the Final Approval Order, the judgment thereon, or any Order in the Lawsuits is filed by any party, objector, Class Member, or other person, the Settlement shall not be or become final or effective, and the Settlement Administrator shall not be obliged to make any payment to Class Counsel or to Named Plaintiffs, until after the Effective Date as provided in this Agreement.

D.    Upon transferring the Settlement Payment to the Class Settlement Fund created for the Lawsuits, FXG will have no further responsibility or liability for any amount of attorneys' fees or costs for work performed or expenses incurred in connection with the Lawsuits to any of the Class Counsel or any other counsel for Plaintiffs or any Class Member, including any prior firm of the Class Counsel or those involved in the MDL proceedings. In the event any claim for attorneys' fees or costs in connection with the Lawsuits is made by any counsel other than Class Counsel, the parties agree that FXG has no obligation of any kind to satisfy any such claim. In the event of any claim for attorneys' fees or costs brought against FXG in connection with the Lawsuits, Class Counsel agree to indemnify FXG against any payment on claims for fees or costs made by other counsel for work performed in connection with the Lawsuits. Class Counsel represent that there are no liens related to any fees associated with the claims of the Class Members as of the execution date of this Agreement. FXG shall have no responsibility or liability for any amount of attorneys' fees or costs attributable to the Lawsuits, including any incurred in the MDL proceedings. Any attorneys' fees or costs dispute between Class Counsel and any other attorney(s) will not interfere with the Settlement, the provisions of this Settlement Agreement, the dismissal of the Lawsuits, or the releases obtained pursuant to the Settlement Agreement. Defendants are hereby released from potential liability for statutory attorneys' fees where applicable and agree that Class Counsel may petition the Court for an award of fees from the settlement fund.

## VIII.   RELEASE

By executing this Agreement, Plaintiffs, on behalf of themselves and the Class Members (including their affiliated business entities, if any), acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuits shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims (as defined herein) shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees.

In connection with such release of claims, Named Plaintiffs and the Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they may have against Releasees. In furtherance of such intention, the release herein given to the Releasees by the Named Plaintiffs and Class Members shall be and remain in effect as a full and complete general release of all Released Claims.

Notwithstanding the above, the Court shall retain jurisdiction over the parties, the Class Members and the Settlement with respect to the future performance of the terms of this Settlement Agreement, and to assure that all payments and other actions required by the Settlement are properly carried out.

## IX.    COVENANT NOT TO SUE

Plaintiffs, on behalf of themselves, the Class Members, and their affiliated business entities (if any), (a) covenant and agree that neither Plaintiffs nor any of the Class Members, nor any of Plaintiffs' or Class Members' affiliated business entities (if any), nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims; (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that this Settlement shall be a complete bar to any such action.

## X.    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.    Plaintiffs' Counsel, FXG's in-house counsel, and FXG's undersigned outside counsel agree that they will not issue or cause to be issued any press release directed to any media representative regarding the Lawsuits or the Settlement (except as required to effectuate notice under this Agreement or as required by law).

B.    Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Settlement, and fully understands and accepts the terms of this Settlement.

C.    Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs are releasing in this Agreement, and no portion of any payment to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no person other than the Plaintiffs and the Class Members have any legal or equitable interest in the claims, demands, actions, or causes of action to be released in this Agreement.

D.    Any other person or entity (including, but not limited to, insurers, lien holders, business partners, related or associated business entities, or other creditors) that has any judgments, liens, subrogation interests, or related claims which arise out of the Released Claims or the damages alleged by the Plaintiffs and the Certified Class as a result of the Released Claims must be satisfied from the payments to claimants as

18

detailed in Section III herein. Plaintiffs and Class Members agree that they are liable for, and will release, hold harmless, defend, and indemnify the Releasees from and against any and all Released Claims, known or unknown, that may be brought by any person, firm, corporation, or other entity, including any lien holders, against the Releasees for any such judgments, liens, interests, or claims that exist arising out of the Released Claims.

E.      None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

F.      Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his or its attorneys.

G.      Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

H.      Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement or any provision hereof.

I.      Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.

J.      It is understood and agreed that this Agreement is for the compromise of disputed claims and is not to be construed as or deemed to be an admission of any liability, fault, or responsibility on the part of FXG or any other Releasee.

K.      It is understood and agreed that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of this Agreement.

L.      This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions. It may be amended only by an agreement in writing, signed by all Parties hereto.

M.      The Parties agree that any dispute regarding the interpretation or enforcement of the terms of this Settlement or in connection with this Agreement shall be resolved by the Court.

## XI.     PRELIMINARY TIMELINE FOR COMPLETION OF SETTLEMENT

The preliminary schedule for notice, approval, and payment procedures carrying out this settlement is as follows. The schedule may be modified depending on whether and when the Court grants necessary approvals and orders notice to the class, sets further hearings, or otherwise orders modifications to this schedule. In the event of such modification, the Parties shall cooperate in order to complete the settlement procedures as expeditiously as reasonably practicable. To the extent this Section XI conflicts with one or more other provisions of this Agreement, the other provision(s) shall supersede this Section XI.

| TIME REQUIRED | EVENT |
|---|---|
| Within 30 Days of entry of Indicative Preliminary Approval Order | Plaintiffs to file Fee and Expense Application. |
| Within 60 Days of entry of Indicative Preliminary Approval Order | Mailing of Settlement Notices. |
| 30 days after mailing of Notice | Settlement Administrator to conduct trace/search efforts and send a follow up mailing to individuals whose Notice Packet was returned as undeliverable or whose listed address is found to be inaccurate. |
| 60 days after mailing of Notice | Last day for Class Members to challenge the Payment Calculations or submit written objections, and for Unnoticed Class Members to opt-out of the settlement. |
| 90 days after mailing of Notice | Plaintiffs file Motion for Indicative Final Approval, including Administrator Report. |
| To be determined by the Court, but no less than 180 days after entry of the Indicative Preliminary Approval Order | Indicative Final Approval and Fee Hearing. |
| Within 20 days of notice of entry of order granting final approval following remand | Settlement Administrator to make the final calculation of payments from the Settlement Fund to be distributed to the Participating Class Members and provide all Counsel with a report listing the amount of all payments to be made to each Class Member. |
| Within 10 Business Days of Settlement Effective Date | Defendant to Deposit Settlement Payment with Settlement Administrator. |

| Within 20 days of Settlement Effective Date | Settlement Administrator to distribute and pay: (1) Participating Class Member Payment; (2) administration costs to Settlement Administrator; (3) class representatives' service awards; (4) all court-approved attorneys' fees and litigation costs and Expenses (First Round Distribution). |
|---|---|
| 180 days after payment of settlement checks | Expiration of first round distribution of class member settlement checks. |
| Within 10 days of date of expiration of class member settlement checks. | Settlement Administrator to make the final calculation of payments to be distributed to the eligible class members of remainder of the Net Settlement Fund and provide all Counsel with a report listing the amount of all payments to be made to each Eligible Settlement Class Member, and amounts, if any, to be paid to unidentified class members who submit claims for settlement shares from the reserve fund. |
| Within 20 days of date of expiration of class member settlement checks | Settlement Administrator to distribute and pay funds remaining in the Net Settlement Fund and Reserve Fund to eligible identified and unidentified class members (Second Round Distribution). |
| 180 days after payment of second round distribution of settlement checks | Expiration of second round distribution of class member checks; Settlement Administrator to pay any residual funds to cy pres beneficiaries and close the settlement fund. |

## XII.    MISCELLANEOUS

### A.    Conditional Nature of Agreement

At the Plaintiffs' option, expressed in written notice to FXG's counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of Plaintiffs or the Certified Class, or fails to enter the Indicative Preliminary Approval Order, Indicative Final Approval Order, or the Final Approval Order in these Lawsuits in substantially the form submitted by the Parties, except that a court ruling regarding Class Counsel's attorneys' fees and costs shall not be a basis for withdrawal. At FXG's option, expressed in written notice to Class Counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of FXG, or fails to enter the Indicative Preliminary Approval Order, Indicative Final Approval Order, or the Final Approval Order in these Lawsuits in substantially the form submitted by the Parties. Any appeal by Class Counsel of the attorneys' fees and costs awarded

by the Court in connection with this Settlement shall not be a basis for any party to have this Agreement become null and void. If this Agreement becomes null and void, the Parties shall move forward with the Lawsuits as though no settlement had been reached, all of the Parties to the Lawsuits being placed in the same position they were before this Settlement was proposed, negotiated and agreed upon.

### B.     Severability

None of the terms of this Agreement is severable from the others. However, if the Court should rule that any term is void, illegal, or unenforceable for any reason, FXG, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations to the Certified Class), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions ultimately approved by the Court.

### C.     Effectiveness, Amendments, and Binding Nature

This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the parties, including Plaintiffs on behalf of themselves and the Certified Classes, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties in the Lawsuits and the Class Members and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Releasees other than FXG, which is a party, are intended to be third-party beneficiaries of this Agreement.

### D.     Cooperation in Implementation

FXG, Plaintiffs, and their respective counsel (including Class Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

### E.     Governing Law

This Agreement shall be construed and governed in accordance with the procedural and substantive law of the state of Alabama, except that all matters of federal law and the Class Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal income tax law.

### F.     No Admission of Liability

The Parties are entering into this Settlement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to the Settlement shall be construed, deemed, or offered as an admission by any of the parties, or by any member of the

Certified Classes, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, and regardless of whether this Agreement ultimately becomes effective.

### G.    Income Tax Obligations

The Settlement Payment is allocated by the Parties to compensate for the reimbursement of expenses (whether deducted from contractual payments to Plaintiffs or paid separately by Plaintiffs) and interest. No representation has been made to the Plaintiffs, Class Members, or their attorneys by FXG regarding the taxability of any portion of the payments under this Agreement. Plaintiffs, Class Members, and Class Counsel are solely responsible for their own tax filing and payment obligations arising from this Agreement, except that the Settlement Administrator will provide Plaintiffs, Class Members, and Class Counsel with copies of IRS Forms 1099 for any payments the Class Settlement Fund makes to them under this Agreement. If any taxing authority imposes employment taxes because any portion of the Settlement Payment is determined to be taxable wages, the Settlement Administrator shall be responsible for the employer share of such taxes. However, as between the Parties, FXG agrees that it is responsible for the employer share of such taxes rather than Plaintiffs or Class Members. Nothing in this paragraph is intended to alter the duties of the Settlement Administrator set forth in this Agreement.

### H.    Signatures

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

Plaintiffs:                                    Defendant:

_Tina Floyd_
_____          _____
Tina Floyd                                     By:
                                               FedEx Ground Package System, Inc.
Date:   _6 - 14 - 16_                          Its:

                                               Date:  _____

23

_____

Bruce Edwin Gentle

Date: _____6 - 2 2 - 1 6_____


_____

Stephanie Sullins Gentle

Date: _____


APPROVED AND ACKNOWLEDGED:        APPROVED AND ACKNOWLEDGED:

_____        _____

Class Counsel        Counsel for FedEx Ground Package System, Inc.

_____

Bruce Edwin Gentle

Date: _____

Stephanie Sullins Gentle

Stephanie Sullins Gentle

Date: _____6/22/16_____


APPROVED AND ACKNOWLEDGED:          APPROVED AND ACKNOWLEDGED:

_____          _____

Class Counsel                          Counsel for FedEx Ground Package System, Inc.


24

_____

Bruce Edwin Gentle

Date: _____

_____

Stephanie Sullins Gentle

Date: _____

APPROVED AND ACKNOWLEDGED:          APPROVED AND ACKNOWLEDGED:

Class Counsel          Counsel for FedEx Ground Package System, Inc.

24