UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: FEDEX GROUND PACKAGE SYSTEM, INC. EMPLOYMENT PRACTICES LITIGATION (MDL 1700) | CAUSE NOS. 3:05-MD-527 RLM |
| *This Document Relates to:*<br>TOFAUTE ET AL. V. FEDEX GROUND PACKAGE SYSTEMS, INC. | CAUSE NO. 3:05-CV-595 RLM |

OPINION AND ORDER

All seven New Jersey class representatives argue that the settlement agreement into which co-lead counsel and FedEx entered is invalid, such that the court ought to dispose of the settlement before conducting a fairness hearing pursuant to Rule 23(e)(2).[1] The class representatives also seek discovery.

I. BACKGROUND

To mitigate risk of releasing privileged or confidential information, the court only outlines the facts generally. Co-lead counsel, FedEx, and two of the seven class representatives, Michael Tofaute and David McMahon, participated in a mediation in February 2016 to resolve the various claims in the New Jersey class action. Messrs. Tofaute and McMahon allege that they never agreed to the proposed settlement that arose from the mediation. They claim co-lead counsel didn't communicate an offer to them that would have shifted attorneys' fees onto

---

[1] The class representatives exceeded the 25-page limit on briefing. The court allows excess pages only "for extraordinary and compelling reasons," which the class representatives didn't try to demonstrate. N.D. Ind. L.R. 7-1(e). The court thus examined only the first 25 pages of the class representatives' brief.

FedEx instead of the common fund, instead rejecting it out of hand. Mr. McMahon says he didn't' want to agree to a settlement under $30 million and thought that co-lead counsel undervalued the case by not considering claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* FedEx and co-lead counsel agreed to a $25.5 million settlement.

Messrs. Tofaute and McMahon claim that New Jersey counsel Anthony Marchetti met with all of the class representatives three months later and encouraged them to agree to the proposed settlement. All declined. They claim that co-lead counsel Matt Houston[2] met with six of the seven class representatives in June 2016, and said that if they didn't sign the settlement, they'd lose their incentive pay while the court would approve the settlement anyway. They claim that Mr. Houston handed out the agreement and Dennis Lynch, one of the class representatives, tore it up.

Frank Cucinotti, the class representative who didn't attend this meeting, claims that Mr. Marchetti called him afterward and said he had the agreement for Mr. Cucinotti to sign and that the others would "come around" to signing it too. Mr. Cucinotti says he signed the document without realizing that none of the other representatives had done so. He claims he didn't have a choice and thought he could still fight the settlement even if he signed. He says that once he learned "the settlement figure was so low because of Co-Lead Counsel's conduct, [he] withdrew [his] signature."

---

[2] Mr. Houston isn't listed as an attorney of record.

Co-lead counsel and FedEx thus signed onto a settlement agreement purportedly resolving all claims in the New Jersey class action, but only one of the six class representatives signed the agreement.

Co-lead counsel submitted a motion for preliminary approval of the New Jersey class action settlement, which the court granted. None of today's disputes about the agreement was made known to the court at that time. The court held that "the terms of the Settlement Agreement are preliminarily approved as (a) fair, reasonable, adequate in light of the relevant factual, legal, practical and procedural considerations of the action; (b) free of collusion to the detriment of the class members; and (c) within the range of possible final judicial approval, subject to further consideration thereof at the Fairness Hearing." The order also approved the form of notice to be sent to class members explaining the settlement and their right to object before final approval. Less than a week later, all seven class representatives objected to final approval of the settlement.

At a scheduling conference to prepare for the upcoming fairness hearings, the class representatives indicated that they weren't just contesting the fairness of the settlement, but whether co-lead counsel and FedEx ever formed a valid settlement at all. For other reasons, the court postponed the fairness hearings, ordered re-notice to the class members, and extended the objection deadlines. In the meantime, the court invited expedited briefing on the threshold question of whether a valid settlement exists for the court to assess.

II. DISCUSSION

The class representatives attempt a frontal attack on the settlement – not arguing as to its fairness but as to whether co-lead counsel can ever bind the class to an agreement that all class representatives oppose, that allegedly undervalues the claims, and that was allegedly signed without discussing a proposed fee-shifting arrangement with the class representatives.

A court has a "continuing duty to undertake a stringent examination of the adequacy of representation by the named class representatives and their counsel at all stages of the litigation." In re Gen. Motors Corp. Engine Interchange Litig., 549 F.2d 1106, 1124 (7th Cir. 1979). But this duty manifests itself in this stage of the litigation in its "review [of] the fairness of any compromise of the class action." *Id.*; Fed. R. Civ. P. 23(e).

The class representatives raise red flags for the court to consider at the fairness hearing. *See* Eubank v. Pella Corp., 753 F.3d 718, 721 (7th Cir. 2014); Mirfasihi v. Fleet Mortg. Co., 356 F.3d 781, 785 (7th Cir. 2004). First is that "major claims or types of relief sought in the complaint have been omitted from the settlement." Manual for Complex Litigation (Fourth) § 21.62 (2004). The settlement provided no relief for claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* Second, "[c]lass counsel must discuss with the class representatives the terms of any settlement offered to the class." Manual for Complex Litigation, *supra*, § 21.641. The class representatives claim that co-lead counsel rejected an offer for a fee-shifting arrangement without discussing it with them first. Third, the court considers "the extent of

participation in the settlement negotiations by class representatives" and will "examine closely any opposition by class representatives to a proposed settlement." *Id.* § 21.62, .642. All seven class representatives oppose the settlement.

But none of these red flags is sufficient to invalidate the settlement before reaching the issue of fairness. It's possible that the likelihood of success on the Consumer Fraud Act claim is minimal. *See* Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by* Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). "The Manual [for Compex Litigation] condemns settlement agreements which provide that the fees and sometimes expenses of plaintiffs' counsel are to be paid separately by the defendant(s) over and above the settlement." In re Gen. Motors Corp. Engine Interchange Litig., 549 F.2d 1106, 1130 (7th Cir. 1979). Last, the class representatives don't have to agree to a settlement for it to be fair and binding on the class. *See id.* at 1128 n.34 ("[T]he unanimous approval of all named plaintiffs is not a prerequisite to judicial approval of a settlement approved by some of the named plaintiffs."); McDonald v. Chi. Milwaukee Corp., 565 F.2d 416, 426 (7th Cir. 1977) (discussing Saylor v. Lindsay, 456 F.2d 896 (2d Cir. 1972) for the proposition that the assent of the plaintiffs who brought a derivative action is not essential to a settlement); Charron v. Wiener, 731 F.3d 241, 253 (2d Cir. 2013) ("[T]he assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met."); Manual for Complex Litigation, *supra*, § 21.642 ("A class representative cannot alone veto a settlement

5

. . . ."); 6 William B. Rubenstein, Newberg on Class Actions § 19:25 (5th ed. 2016) ("[T]he class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole."). The class representatives don't show that unanimous disapproval invalidates a settlement.

The class representatives thus raise bases for the court to assess "whether the compromise agreement, taken as a whole, is in the best interest of the parties seeking relief," McDonald v. Chi. Milwaukee, 565 F.2d at 427, but they don't undercut the agreement before even getting to that issue.

"The goal of the fairness hearing is to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.'" Armstrong v. Bd. of Sch. Dirs., 616 F.2d at 314. To prepare for the fairness hearing, the class representatives might be entitled to discovery on these red flags. See In re Gen. Motors Corp. Engine Interchange Litig., 549 F.2d 1106, 1124 (7th Cir. 1979) ("[T]he conduct of the negotiations was relevant to the fairness of the settlement and [ ] the trial court's refusal to permit discovery or examination of the negotiations constituted an abuse of discretion."). Objectors operate "in an adversary relationship with both plaintiffs and defendants and [are] entitled to at least a reasonable opportunity to discovery against both." Id. at 1125 n.28.

But to get discovery, the class representatives must first "lay[ ] a foundation by adducing from other sources evidence indicating that the

settlement may be collusive." Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 834 F.2d 677, 684 (7th Cir. 1987); Vollmer v. Publishers Clearing House, 248 F.3d 698, 707-708 (7th Cir. 2001) (applying Mars Steel to class members); Manual for Complex Litigation, *supra*, § 21.643.[3] Besides their own allegations that co-lead counsel was self-dealing, class representatives don't point to anything that actually shows it. As mentioned, a knee-jerk rejection against fee-shifting arrangements might only inhibit collusion. In re Gen. Motors Corp. Engine Interchange Litig., 549 F.2d at 1130. Without foundation to support a finding of collusion, discovery won't proceed.

III. CONCLUSION

Based on the foregoing, the court holds that the settlement agreement is valid, DENIES the class representatives' motion to compel [3:05-cv-595, Doc. No. 227] [3:05-md-527, Doc. No. 2984], and declines to direct any discovery as to whether the agreement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).

SO ORDERED.

ENTERED:  February 14, 2017

/s/ Robert L. Miller, Jr.<br>Judge<br>United States District Court

---

[3] The class representatives don't point to any law that a client's right to her attorney's file extends to a class representative's right to the documents co-lead counsel used in negotiating a settlement agreement on behalf of the class. *Cf.* 4 William B. Rubenstein, Newberg on Class Actions § 13:32 (5th ed. 2016) ("One of the reasons that settlement negotiations are subjected to a particularly heightened discovery request is that these negotiations are typically confidential in nature, undertaken pursuant to a confidentiality agreement among the settling parties, and plausibly protected by various privileges.").

7