| | | |
|---|---|---|
| IN RE: FEDEX GROUND PACKAGE SYSTEM, INC. EMPLOYMENT PRACTICES LITIGATION (MDL 1700) | ) ) ) ) | CAUSE NOS. 3:05-MD-527 RLM |
| *This Document Relates to:* TOFAUTE ET AL. V. FEDEX GROUND PACKAGE SYSTEMS, INC. | ) ) ) ) ) | CAUSE NO. 3:05-CV-595 RLM |

<u>OPINION AND ORDER</u>

I recently approved the final settlement agreements in this class action and eighteen others, all consolidated in an MDL that's now twelve years old, all resolving claims related to whether FedEx Ground truck drivers were employees or independent contractors. I also granted in part the class counsel's fee requests in each.[1] Counsel for the objecting class representatives in *Tofaute*, the New Jersey class action, now ask for fees and costs. Fed. R. Civ. P. 23(h).

If the named plaintiffs in a typical class action are mere "pawns" or "paws" of the class lawyers, <u>Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.</u>, 834 F.2d 677, 681 (7th Cir. 1987); <u>In re Trans Union Corp. Privacy Litig.</u>, 629 F.3d 741, 744 (7th Cir. 2011), then this class action is far from typical. After I granted preliminary approval of the New Jersey action's settlement agreement, the seven class representatives retained counsel to fight against final approval and class counsel's fee petition.

---

[1] The motions for final approval of the settlement agreement and attorney fees in the Kansas class action, <u>Craig v. FedEx Ground Package Systems, Inc.</u>, 3:05-cv-530, are still pending.

## I. BACKGROUND

This opinion starts with an overview of the class representatives' litigation leading up to my order approving the settlement agreement and granting in part the class counsel's fee request. An overview of the history of the class action and this MDL can be found in that order. [Doc. No. 257]; Tofaute v. FedEx Ground Package Sys., Inc., No. 3:05-cv-595, 2017 WL 1716276, at *1-4 (N.D. Ind. Apr. 28, 2017).

After preliminary approval of the settlement agreement between class counsel and FedEx Ground, all seven class representatives retained Nagel Rice LLP and DiSabato & Bouckenooghe LLC to object to the fairness of the agreement. The grounds for their objections were that class counsel undervalued the drivers' claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.*, when it settled those claims for nothing, and under the remaining claims when class counsel settled them for about 55 percent of class counsel's estimate of their potential value.

Fairness hearings on the settlement agreements resolving all twenty cases in the MDL were scheduled for January 23 and 24, 2017. The court was to hold a meeting on January 17 to discuss the format for the upcoming fairness hearings. Before the January 17 meeting, the class representatives found an error in the notice to class members as to the average amount of recovery under the settlement agreement[2] and as to whether the class representatives approved

---

[2] The notice stated that the average recovery for the New Jersey class was $71,194 when, in fact, it was $19,301. This was a clerical error. $71,194 was actually the maximum amount a class member would recover. The notice correctly stated the recipient's estimated settlement payment.

the settlement. They asked that new notice be issued showing the corrected average recovery amount and explaining that the class representatives don't approve of the settlement. They also asked that the fairness hearings be adjourned.

The class representatives then asked to be allowed to appear at the upcoming organizational meeting, which I granted. They reiterated the problems with notice and also indicated that they intend to challenge the underlying validity of a settlement agreement that isn't approved by any of the class representatives. For reasons unrelated to the notice issue, I decided that the fairness hearings would need to be postponed. At the request of class counsel and FedEx Ground, I rescheduled the hearings for March 13 and 14, 2017. Given the additional time before the fairness hearings, the class representatives sent another request to the court to order a revised notice.

Before ruling on the class representatives' re-notice requests, class counsel and FedEx Ground stipulated that they would re-notice the class. Their proposed notice said that this notice was amended to correct certain errors, which would appear in boldface throughout the notice. It updated the fairness hearing date, the average settlement figure, and sentences about who supported the agreement to say that the class representatives didn't support it. It also included an extended objection deadline.

Class counsel and FedEx Ground said they didn't believe the errors in the first notice were material, but that they were willing to re-notice the class out of "an abundance of caution," and "to eliminate any possible doubt as to whether

the Class had sufficient information." The class representatives asked for the new notice to mention several more times that the class representatives don't agree with the settlement and that they've hired their own counsel to pursue their objections. I found the stipulated re-notice to be sufficient and the class representatives' proposed additions to be overkill that could confuse more than educate. I ordered the re-notice according to the stipulation, extended the objection deadline, and gave the class representatives time to argue about the validity of a settlement agreement that all class representatives oppose. [MDL Doc. No. 2979]. About a week later, the class representatives filed a letter saying that the class action website still contained the old and inaccurate information from the initial notice. Class counsel promptly updated the website.

Next, the class representatives submitted a brief explaining that they had asked class counsel for documents relating to the mediation and for the opportunity to depose class counsel, but that class counsel never responded. They argued that class counsel, as the class representatives' lawyers until the class representatives obtained outside counsel, must give the class representatives access to their file. They also sought discovery. They then sent another letter to the court requesting discovery to aid their argument that the parties never reached a valid settlement.

By this time, it became known to class counsel that the class representatives were organizing an objection campaign amongst the class members. The class representatives sent out letters to class members explaining the error in the initial notice and that they believe the case to be worth more

than the amount for which it was settled. Attached to the letters were forms the recipients could fill out and send back to the court to register their objections. The forms said that the signatory objects to an average settlement amount that's lower than originally noticed, and that if the class representatives don't agree with the settlement, the signatory won't agree either.

Class counsel asked me to issue a corrective notice to class members who might have received the communication, to enjoin the class representatives from circulating the form, and to order the class representatives to show cause why they shouldn't have to pay for the corrective notice. I held that the class representatives have the right to drum up objections from their peers as long as they don't misinform them, and so I denied class counsel's request. [MDL Doc. No. 3001].

While awaiting my opinion on the emergency injunction, the class representatives filed their brief addressing the facial validity of the settlement agreement. They argued that during settlement negotiations, class counsel didn't discuss a proposed settlement with the class representatives that involved fee-shifting. They argued that this failure, combined with the class representatives' unanimous opposition and class counsel's alleged undervaluing of the claims, makes the settlement invalid on its face. I rejected these arguments. Even though the class representatives' opposition and class counsel's settling one of the claims for nothing raise red flags for fairness review, *see* <u>Eubank v. Pella Corp.</u>, 753 F.3d 718, 721 (7th Cir. 2014), none of these is sufficient to knock out a settlement agreement before fairness review. I also denied the class

representatives' request for discovery because they didn't lay a foundation of collusion or self-dealing that justified prying open the settlement process. [MDL Doc. No. 3004]. And so we marched on toward the fairness hearings.

On the last day of the newly-extended objection period, the class representatives filed a brief opposing class counsel's request for fees of thirty percent of the class's $25.5 million recovery. First, they argued that all twenty of the cases in the MDL should be treated as a single "megafund" that, because of its enormity and the overlap in work across state class actions, merits a reduced percentage recovery for class counsel. In the alternative, they recommended a "sliding scale" for recovery. They also sought a lodestar cross-check to make sure the fees are reasonable and to prevent class counsel from recovering multiple times for work performed in other class actions in the MDL.

In the meantime, the court received objections from 43 other class members who filled out the objection form that the class representatives circulated.[3]

The class representatives' counsel appeared at the fairness hearing on the New Jersey class action on March 14, 2017. I gave all sides opportunity to argue over whether class counsel and FedEx Ground reached a fair compromise of the New Jersey class's claims, and whether class counsel sought a reasonable fee

---

[3] Months earlier, the court also received an unrelated objection from George Ponzoni, who wasn't represented, and whose objection I addressed and overruled in the order approving the final settlement agreement. [Doc. No. 257]; Tofaute v. FedEx Ground Package Sys., Inc., No. 3:05-cv-595, 2017 WL 1716276, at *8 (N.D. Ind. Apr. 28, 2017).

award. About six weeks later, I approved the final settlement agreement and awarded almost all of class counsel's requested fee.[4]

The class representatives' counsel now asks for $388,006 in attorney fees and $7,836.13 in costs for their work on this litigation, to be paid from fees otherwise designated for class counsel.

## II. STANDARD OF REVIEW

"[O]bjectors play an essential role in judicial review of proposed [class action] settlements" because they guard against collusive deals between class counsel and defendants. Pearson v. NBTY, Inc., 772 F.3d 778, 787 (7th Cir. 2014). Class counsel "may be willing to settle for less for the class if the defendants will help them obtain a generous fee award, and the defendants will be happy to help them if the sum of the fee award and the relief granted to the class is smaller than it would be if the class lawyers pressed for more generous relief for the class." In re Trans Union Corp. Privacy Litig., 629 F.3d 741, 743 (7th Cir. 2011) (italics omitted). "It is desirable to have as broad a range of participants in the fairness hearings as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally." Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 288 (7th Cir. 2002).

Rule 23(h) allows for objectors' counsel "who contribute materially to the proceeding to obtain a fee." *Id.* at 288; Fed. R. Civ. P. 23(h). To contribute

---

[4] I reduced the fee slightly only because I deducted administrative costs before deriving the final fee amount. *See* Redman v. RadioShack Corp., 768 F.3d 622, 630 (7th Cir. 2014). This wasn't done at the request of the class representatives or any other party.

materially, "the objectors [must] produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." *Id.* at 286. While settling class counsel has incentive to undervalue a claim, objectors can be "motivated to exaggerate the value of the claim . . . so that they could get a generous award of attorneys' fees." Mirfasihi v. Fleet Mortg. Corp., 551 F.3d 682, 687 (7th Cir. 2008).

Just as class counsel acts on a contingency basis, so too do the objectors. If their work doesn't benefit the class enough to justify paying them, they lose the gamble and don't get paid. "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred." *Id.*

## III. DISCUSSION

The benefit the objecting class representatives produced for the class was a modest one. They caught the errors in the notice, which understated the class members' average recovery and indicated that the class representatives supported the deal. Through their litigation of this issue, the class (or at least those members who read the notice) became better informed as to how their fellow drivers would be compensated and the strength of opposition to the deal.

Class counsel argues that the class representatives shouldn't be credited for the re-notice. They say that they stipulated to re-noticing the class without a court order and that they weren't obligated to re-notice because the estimated recovery for each class member was correct in the original notice. Regardless of whether the updated notice was required or only done out of "an abundance of

caution," the new notice helped provide class members with information that could assist them in deciding whether or how to object. The settlements in this class action, averaging $19,301 per member, were large enough that this information could have swayed members to retain counsel to handle their objections. Class counsel also caught similar errors on the class action website.

But there's no other area where the class representatives' litigation could be considered a "success" in that it actually resulted in an improvement for the class. The class representatives' argument that the settlement agreement was facially invalid because all class representatives opposed it and because it settled one of the claims for no value had little basis in law and just reiterated arguments that came out in assessing the settlement's fairness. Their requests for discovery didn't provide a foundation for collusion that the law required. I refused to prohibit the class representatives from circulating fliers to other class members to encourage them to object, but the objections the class representatives elicited didn't bring out any new issues or reasons for disapproval.[5]

As to the fairness of the settlement agreement, after I evaluated the class's claims under the New Jersey Consumer Fraud Act, I concluded that class counsel was perfectly reasonable in treating the likelihood of success on those claims as negligible and settling them for nothing. A settlement on the remaining claims at fifty-five percent of their maximum expected return, given the likelihood

---

[5] It was also never explained how involved the class representatives' attorneys were in the objection campaign. Because the attorneys never took credit for the campaign, even if the campaign resulted in stronger arguments for disapproval, the attorneys wouldn't have deserved compensation for it.

of further deductions as well as the added time and expense of continuing to litigate, also seemed perfectly reasonable. In evaluating class counsel's fee request, I determined that a thirty percent award seemed a good approximation of what class counsel could have negotiated with the plaintiffs *ex ante,* and so I approved that too.

The class representatives argue that the settlement doesn't have to be improved to qualify for fees if "[t]he objections to the settlement caused th[e] Court to spend even more hours in analyzing and assessing the complex settlement agreement, and cast in sharp focus the question of the fairness and adequacy of the settlement to all the members of the class." Frankenstein v. McCrory Corp., 425 F. Supp. 762, 767 (S.D.N.Y. 1977). They argue that even if objections don't improve the terms of the settlement, objectors should be paid if "their efforts have been of assistance to the court." Howes v. Atkins, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 358 (N.D. Ga. 1993) ("If objectors' appearance sharpens the issues and debate on the fairness of the settlement, their performance of the role of devil's advocate warrants a fee award.").

Regardless of whether the objectors assisted the court through added debate alone, this isn't the law in our circuit. To get paid, the objectors must "produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 288 (7th Cir. 2002). "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of

time) incurred." <u>Mirfasihi v. Fleet Mortg. Corp.</u>, 551 F.3d 682, 687 (7th Cir. 2008). Without tangible benefit to the class, there's no basis for a fee award.

The class representatives rely on a case from a sister district, *Great Neck Capital Appreciation Investment Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.* for the proposition that "enhanc[ing] the adversarial process by generating debate about issues relating to the proposed settlement" merits fees. 212 F.R.D. 400, 412 (E.D. Wis. 2002). The critical distinction in *Great Neck Capital* is that the objector there did much more than just get the court to write a more elaborate opinion. The objector's litigation resulted in a renegotiated settlement agreement that preserved the class's ERISA claims, which the original agreement would have released. The objector merited fees because she "contributed materially to the proceeding *both* by benefitting a given group of litigants and the class a whole, and also by assisting the court and enhancing the adversarial process." *Id.* at 413. In contrast, these class representatives certainly made the fairness hearings more adversarial, but their arguments ultimately held no water, which provided no benefit to the class.

Not only did the settlement agreement and the attorney fee award remain unchanged as a result of the class representatives' litigation, but some of the objectors' tactics were vexatious. First, the class representatives' arguments often ran counter to binding precedent. Rather than discard those arguments or at least acknowledge the inconsistency, they selectively quoted, conveniently ignoring the language that outright contradicted them.

11

The most glaring example of this was in the class representatives' brief opposing the class counsel's fee request. Their primary argument was that all cases in the MDL should be treated as a single "megafund." Because of the sheer size of the total MDL settlements, they argued, the attorneys should receive a lower percentage award than they would for smaller recoveries. The class representatives cited a portion of binding case-law that could arguably allow for this proposition. *See* In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, court must do their best to award counsel the market price for legal services . . . ."). But they omitted the sentence from that same paragraph explicitly rejecting what they asked the court to do. *Id.* ("We have never suggested that a 'megafund rule' trumps these market rates . . . ."), *quoted in* Tofaute v. FedEx Ground Package Sys., Inc., No. 3:05-cv-595, 2017 WL 1716276, at *11 (N.D. Ind. Apr. 28, 2017). This didn't "enhance the adversarial process." Rather, it only "compelled [the court] to expend time and energy addressing an argument that [the objectors] should not have made and that did not benefit the class." Gehrich v. Chase Bank USA, N.A., 12 C 5510, 2016 WL 3027831, at *5 (N.D. Ill. May 27, 2016).

Second, I was disappointed with the objectors' accusations that class counsel and FedEx Ground colluded in this case on a total payout for the entire MDL, regardless of the strength of the individual state-law claims. [Doc. No. 257]; Tofaute v. FedEx Ground Package Sys., Inc., No. 3:05-cv-595, 2017 WL 1716276, at *13-14 (N.D. Ind. Apr. 28, 2017). Their language of "sleight of hand" and "efforts to misdirect this Court" wasn't grounded in evidence, and "it doesn't

persuade, it doesn't add credibility to the rest of the argument, and it serves to reduce even further the esteem with which [the] public sees the legal profession." *Id.*

The law abounds with examples of class counsel, in exchange for fast or fat attorney fees, selling out a class whose claims are worth more, and whose interests are too diffuse to monitor their attorneys' performance. *See, e.g.*, Eubank v. Pella Corp., 753 F.3d 718 (7th Cir. 2014); Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 652-654 (7th Cir. 2006); Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 785 (7th Cir. 2004). But I had no reason to think this was such a case. The objectors offered no foundation for collusion when they sought discovery into the settlement process. [MDL Doc. No. 3004]; Tofaute v. FedEx Ground Package Sys., Inc., No. 3:05-cv-595, 2017 WL 632119, at *3 (N.D. Ind. Feb. 14, 2017) (quoting Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 834 F.2d 677, 684 (7th Cir. 1987)). Class and co-lead counsel worked on these cases for more than a decade, litigating them past my grants of summary judgment on to our court of appeals, to the Kansas Supreme Court, and then to intensive negotiations based on calculated assessments of the strengths of the various state-law claims. The payoff for the lawyers was undoubtedly large. But that doesn't indicate collusion, and that doesn't indicate a fee different from what an *ex ante* bargain likely would have produced.

Where objectors' benefits to the class are meager and their litigation tactics are misleading or needlessly accusatory, I find little basis for a fee award. *See* Mirfasihi v. Fleet Mortg. Corp., 551 F.3d 682, 688 (7th Cir. 2008) ("The

improvement that the objectors produced in this case, minus the detriment caused by their courtroom antics, barely justified the modest fee that the judge awarded them."). The class representatives improved the notice to the class about the average fee award and the class representatives' opposition to the settlement. But this benefit was modest at best. The new notice resulted in more objections, but no better bases for objection. It resulted in no change to the settlement agreement or to class counsel's fee award. The modest benefit to the class was far outweighed by the resources spent litigating points of law that were contrary to precedent, and accusations that undermined faith in the proceedings. I don't find a fee to be warranted here.

## IV. CONCLUSION

Based on the foregoing, the class representatives' motion for attorney fees and costs [Doc. No. 259] is DENIED.

SO ORDERED.

ENTERED: June 12, 2017

                                        /s/ Robert L. Miller, Jr.
                                        Judge
                                        United States District Court